[Nos. C032607, C033331. Third Dist. Mar. 6, 2001.]

DAVID ROSENAUR, Plaintiff and Appellant, v.
WALT SCHERER et al., Defendants and Respondents.

**COUNSEL**

George L. Johnston for Plaintiff and Appellant.

Orrick, Herrington & Sutcliffe, Cynthia J. Larsen, James E. Houpt and Christopher E. Krueger for Defendants and Respondents.

## OPINION

## KOLKEY, J.—

### INTRODUCTION

Following a bitterly fought local initiative campaign concerning the commercial development of certain real property in Loomis, plaintiff David Rosenaur sued his political opponents—defendants Walt Scherer, Lorell Long, Walt Scherer For Town Council, and the Loomis Community Action Committee—for defamation and slander of title. The suit was based on a heated exchange at a shopping center in which one of the defendants purportedly called plaintiff a "thief" and on statements in defendants' campaign literature that the property at issue was owned by "a partnership of speculators based in Los Angeles." The trial court granted defendants' motion to strike the complaint pursuant to Code of Civil Procedure section 425.16,[1] commonly known as the "anti-SLAPP statute,"[2] and awarded them attorney fees.

Plaintiff appeals. He claims that he made out a prima facie claim of defamation sufficient to survive a motion to strike under section 425.16.

We shall affirm the judgment. ▇ First, "[w]hether published material is reasonably susceptible of an interpretation which implies a provably false assertion of fact—the dispositive question in a defamation action—is a question of law for the court." (*Couch v. San Juan Unified School Dist.* (1995) 33 Cal.App.4th 1491, 1500 [39 Cal.Rptr.2d 848].) "That which might be a statement of fact under other circumstances may become a statement of opinion [that does not state an actual fact] when uttered in the political context." (*Desert Sun Publishing Co. v. Superior Court* (1979) 97 Cal.App.3d 49, 52 [158 Cal.Rptr. 519].) In this case, in the context of a heated confrontation at a shopping center between political opponents, a foe's charge of "thief" would be reasonably interpreted as loose figurative language and

---

[1]Unless otherwise designated, all further statutory references are to the Code of Civil Procedure.

[2]SLAPP, an acronym for "strategic lawsuits against public participation" coined by University of Denver professors Penelope Canan and George W. Pring, has been adopted by California courts to describe lawsuits affecting speech or petition rights. (See *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1109 fn. 1 [81 Cal.Rptr.2d 471, 969 P.2d 564]; *Matson v. Dvorak* (1995) 40 Cal.App.4th 539, 542, fn. 1 [46 Cal.Rptr.2d 880].)

hyperbole, not a claim that the plaintiff actually had a criminal past. (See *Milkovich v. Lorain Journal Co.* (1990) 497 U.S. 1, 20 [110 S.Ct. 2695, 2706-2707, 111 L.Ed.2d 1, 19].) As distasteful as such a charge is, "[o]ur political history reeks of unfair, intemperate, scurrilous and irresponsible charges" (*Desert Sun Publishing Co. v. Superior Court, supra,* 97 Cal.App.3d at p. 51), which are nonetheless protected by the First Amendment when no one could reasonably interpret them as a defamatory fact. (*Milkovich v. Lorain Journal Co., supra,* 497 U.S. at p. 20 [110 S.Ct. at pp. 2706-2707, 111 L.Ed.2d at p. 19].)

Second, defendants did not act with the requisite malice in connection with their campaign literature's charge that plaintiff was in partnership with speculators—that is, other investors—in Los Angeles. Admittedly, the campaign literature was based on information from a 1986 amended statement of partnership, which no longer reflected the current slate of partners that owned the property. But defendants did not act with malice by relying on the publicly filed partnership statement: It was of a type expressly intended to inform the public of the names of partnership members; it was the most recent such document on file for the partnership; it could be amended only by an entity over which plaintiff had exclusive control; and nothing in the record suggests defendants harbored any doubts as to the accuracy of the information it contained.

Plaintiff also challenges the court's award of attorney fees to defendants pursuant to section 425.16, subdivision (c). He contends that defendants are not entitled to recover attorney fees because defense counsel agreed to a partial pro bono fee arrangement that relieved defendants (but not their insurers) of their obligation to satisfy counsel's accrued attorney fees. Because neither the plain language of section 425.16, subdivision (c), nor the policies underlying the anti-SLAPP statute justify denying a prevailing defendant the right to recover attorney fees on the ground that he was represented pro bono, plaintiff's argument fails.

We shall affirm both the judgment and the award of attorney fees.

FACTUAL AND PROCEDURAL BACKGROUND

I. *Background*

A. *The Property*

The property at issue is a 64-acre parcel of raw land, located at the intersection of Interstate 80 and Horseshoe Bar Road in the Town of Loomis.

At all relevant times, this property has been owned by a California general partnership called Loomis Acres.

Plaintiff, a Placer County resident, acquired an interest in the property in 1984 when his company, Export International, Inc. (Export), became a partner in Loomis Acres. At that time, the other partners in Loomis Acres were Herbert Kern and Western Dominion Corporation, a California corporation.

An amended statement of partnership for Loomis Acres was recorded in Placer County in January 1986. That document identified the partners of Loomis Acres as plaintiff, Export, Herbert Kern, and Western Dominion Corporation. It also stated that Export was the sole managing partner and the only partner capable of executing documents on behalf of Loomis Acres.

The amended statement of partnership, as recorded, did not show that Western Dominion Corporation and Herbert Kern had sold virtually all of their interest to Export pursuant to written agreements executed the previous month, leaving the parties' respective ownership interests in Loomis Acres as follows:

Export, 99.97 percent;

Plaintiff, .01 percent;

Western Dominion, .01 percent; and

Herbert Kern, .01 percent.

B. *Plaintiff's Efforts to Change the Zoning for the Property*

Since he first acquired an interest in the property, plaintiff has endeavored to change its zoning designation so as to permit commercial development on the property. Specifically, plaintiff hoped to build a retail village or shopping center in a project that came to be known as Turtle Island.

Defendants Walt Scherer (a former Loomis mayor and town councilman) and Lorell Long were among those residents concerned that the Turtle Island project might be incompatible with Loomis's small town, semirural character.

## II. *The Campaign and the Allegedly Defamatory Campaign Flyers*

### A. *Measure F*

In 1998, having failed to obtain from the Town of Loomis the zoning changes required for the project, plaintiff arranged to place an initiative on the ballot for the November 3, 1998, General Election.

Designated Measure F, the initiative's purpose was to allow the Loomis Acres property to be used for commercial purposes. According to the sample ballot, enactment of Measure F would (among other things) amend the Loomis General Plan and Zoning Ordinance by adding a new "highway commercial" designation, rezone the Loomis Acres property as highway commercial, and allow a wide variety of commercial uses for property zoned as highway commercial, including for retail space, offices, and nightclubs.

There was vocal opposition to Measure F. Scherer and Long were among those concerned that Measure F neither required plaintiff to build any particular project nor prevented his subsequent sale of the property to someone who had a different project in mind.

### B. *Preparation of the Campaign Flyers*

In mid-October 1998, after conferring with Scherer, Long searched public documents to discover whether plaintiff might have partners in Loomis Acres to whom he had to answer or who might have control over plaintiff's development decisions.

After confirming from the Placer County Assessor's records that Loomis Acres owned the property, Long found in the records of the Placer County Recorder's office the January 1986 amended statement of partnership for Loomis Acres. It identified its partners as plaintiff, Export, Herbert Kern, and Western Dominion Corporation. When Long reviewed the documents filed with the California Secretary of State concerning Western Dominion Corporation and Export, she found (1) a 1983 statement by Domestic Stock Corporation for Western Dominion Corporation, identifying its officers as Herbert Kern and Massimo Scaglioni, both of whom listed addresses in Encino, California (located in Los Angeles County); (2) a 1992 statement by Domestic Stock Corporation for that company, declaring that there had been no change in the information previously filed with the Secretary of State; and (3) a 1991 statement by Domestic Stock Corporation for Export, identifying its officers as plaintiff, George Johnston, and Barry Gladstone, all of whom gave their addresses as Rancho Cordova.

Long obtained certified copies of these documents, and showed them to Scherer. Based on proposed agreements that plaintiff had sent in 1998 to the Town of Loomis, Scherer also confirmed that the property was *still* owned by Loomis Acres. Believing, as a result of Long's research, that plaintiff was "in partnership with a Southern California corporation and an individual in Southern California," Long and Scherer agreed with others that "voters should know that [the plaintiff] probably had to answer to others for his development plans."

## C. *The Community Action Committee Flyer*

As a result of their research, Scherer, Long, and others drafted a campaign flyer that stated that it was paid for by defendant Loomis Community Action Committee and urged readers to "Vote *No* on Measure F" (the Community Action Committee flyer).[3] One page of the Community Action Committee flyer contained the following text: "Will the *real owner(s)* of Turtle Island please stand up? [¶] Turtle Island is owned by a partnership of *speculators* based in *Los Angeles*! [¶] Would you like to know the *Identity* of the *real owners* of Turtle Island? [¶] Would you like to know why there *is no project* in Measure F?"[4]

A second page of the Community Action Committee flyer warned: "**Don't be fooled**! [¶] There is *No Project* in Measure F because these land speculators simply want an unregulated zoning change that will greatly increase the value of the parcels. Measure F does not stop the promoters from *selling out to Anyone* who would like to develop without the normal safeguards for the Town of Loomis. . . . [¶] **What's the big secret? Turtle Island is *Not* locally owned**."[5]

On the same page appeared a pie-chart-style diagram over the heading "Owners: Loomis Acres Partnership" and "Information from: Placer County Recorders Office and California Secretary of State." The circle was divided into equal quarter-segments purporting to represent the four partners in Loomis Acres Partners, and was labeled, respectively: (1) "Herbert Kern[,] Los Angeles"; (2) Western Dominion Corp.[,] Los Angeles (Herbert Kern[,] Massimo Scaglioni)"; (3) "David Rosenaur"; and (4) "Export International[,] Rancho Cordova (George Johnston[,] Barry Gladstone[,] David Rosenaur)." An unspecified number of voters received the Community Action Committee flyer.

---

[3]Uppercase letters and italics in original.
[4]Uppercase letters and italics in original.
[5]Uppercase letters, italics, and boldface type in original.

### D. *The Walt Scherer for Town Council Flyer*

Members of defendant Walt Scherer for Town Council drafted another flyer or advertisement (the Walt Scherer for Town Council flyer), urging support for Scherer, who was a candidate for the Loomis Town Council in the same election. That flyer also described Scherer's opposition to Measure F. It stated that Scherer had "[e]xposed the fact that claims of local ownership of Turtle Island are untrue and the property is actually owned by Los Angeles land speculators."

Measure F was defeated.

### III. *The Lawsuit and the Motion to Strike*

Plaintiff then brought this action for defamation against Scherer, Long,[6] the Loomis Community Action Committee, and Walt Scherer for Town Council.

The first cause of action alleged that the statements made in both the Community Action Committee flyer and the Walt Scherer for Town Council flyer were false, made with malice, "caused doubt to be cast on plaintiff's title to the property," and thus "impaired the value and marketability of the property."

The second cause of action alleged that the statements made in each of the two campaign flyers defamed plaintiff, in that "plaintiff had told everyone that he and companies which he solely owned and controlled were the only persons who had a beneficial ownership interest in the property" and defendants' malicious and false statements to the contrary caused him to suffer shame and mortification, and damaged his reputation.

In the third cause of action, plaintiff alleged that defendants slandered him by falsely calling him a thief.[7]

Defendants brought a special motion to strike pursuant to section 425.16.[8] They argued (among other things) that plaintiff is a public figure who must

---

[6]Lorell Long was erroneously sued as Lorrell Long.

[7]The third cause of action also alleged that defendants slandered him by stating "that he had stopped payment of a check to the Town of Loomis in order to do harm to a resident of Loomis in relation to the condemnation of her property." Plaintiff later abandoned that allegation.

[8]In its entirety, section 425.16 provides:

"(a) The Legislature finds and declares that there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech

show that defendants made the challenged statements with "actual malice," i.e., with knowledge of their falsity or reckless disregard for their falsity, and

and petition for the redress of grievances. The Legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process. To this end, this section shall be construed broadly.

"(b)(1) A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

"(2) In making its determination, the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.

"(3) If the court determines that the plaintiff has established a probability that he or she will prevail on the claim, neither that determination nor the fact of that determination shall be admissible in evidence at any later stage of the case, and no burden of proof or degree of proof otherwise applicable shall be affected by that determination.

"(c) In any action subject to subdivision (b), a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs. If the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion, pursuant to Section 128.5.

"(d) This section shall not apply to any enforcement action brought in the name of the people of the State of California by the Attorney General, district attorney, or city attorney, acting as a public prosecutor.

"(e) As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

"(f) The special motion may be filed within 60 days of the service of the complaint or, in the court's discretion, at any later time upon terms it deems proper. The motion shall be noticed for hearing not more than 30 days after service unless the docket conditions of the court require a later hearing.

"(g) All discovery proceedings in the action shall be stayed upon the filing of a notice of motion made pursuant to this section. The stay of discovery shall remain in effect until notice of entry of the order ruling on the motion. The court, on noticed motion and for good cause shown, may order that specified discovery be conducted notwithstanding this subdivision.

"(h) For purposes of this section, 'complaint' includes 'cross-complaint' and 'petition,' 'plaintiff' includes 'cross-complainant' and 'petitioner,' and 'defendant' includes 'cross-defendant' and 'respondent.'

"(i) On or before January 1, 1998, the Judicial Council shall report to the Legislature on the frequency and outcome of special motions made pursuant to this section, and on any other matters pertinent to the purposes of this section.

"(j) An order granting or denying a special motion to strike shall be appealable under Section 904.1.

that plaintiff could not establish a probability of prevailing on the first two causes of action based on that standard. Defendants submitted sworn statements by Scherer and Long, attesting to Long's search of the public records and stating that they had no reason to doubt the documentary evidence that plaintiff was only one of several partners in Loomis Acres that owned the property, and not its sole owner. As to the third cause of action, defendants argued that plaintiff could not maintain a defamation claim based upon an allegation that an unidentified defendant called plaintiff a "thief" because, inter alia, such name-calling is constitutionally protected "in the arena of political debate."

In response, plaintiff conceded that section 425.16 applies to this case, that he is a public figure for purposes of this lawsuit, and that to prevail, he had to show that defendants acted with actual malice. To that end, he submitted his declaration and corporate documents establishing that in December 1987, he "in effect became the sole owner of the PROPERTY by buying out two minority partners, leaving the general partnership with only two partners: [plaintiff], individually, and EXPORT." (Original capitalization.) Plaintiff asserted that defendants neither asked plaintiff whether he had any partners nor contacted Herbert Kern—the only individual who signed any documents on behalf of Western Dominion—to ask whether he was still a partner in Loomis Acres. Plaintiff also submitted the declaration of a title company escrow officer, who averred that the amended statement of partnership did not tell anything about the partnership's status following the date upon which it was recorded, and that it was not always necessary to record an amended statement of partnership whenever a change in partnership status occurred.

Plaintiff's declaration also stated the following concerning the allegation that he was called a thief: "On October 24, 1998, I was at the Raley's Shopping Center in Loomis at a table set up for the purpose of passing out literature in support of Measure F. Walt Scherer was there also, at a table set up opposing Measure F. I could hear what Mr. Scherer was saying to some individuals who were at his booth. I believed those statements to be inaccurate, and said so. In response, Mr. Scherer in a loud voice started calling me

---

"(k)(1) Any party who files a special motion to strike pursuant to this section, and any party who files an opposition to a special motion to strike, shall, promptly upon so filing, transmit to the Judicial Council, by e-mail or fax, a copy of the endorsed-filed caption page of the motion or opposition, a copy of any related notice of appeal or petition for a writ, and a conformed copy of any order issued pursuant to this section, including any order granting or denying a special motion to strike, discovery, or fees.

"(2) The Judicial Council shall maintain a public record of information transmitted pursuant to this subdivision for at least three years, and may store the information on microfilm or other appropriate electronic media."

a thief and a liar. Many people overheard these statements directed to me by Mr. Scherer."

In reply, Scherer denied the name-calling incident. Defendants also submitted the declarations of the five volunteers who had worked at the "No On Measure F" table on October 24, 1998, each of whom averred that while working that day, they neither heard Scherer call plaintiff a thief, a liar, or any combination of those two epithets, nor observed any verbal confrontation between the men.

Scherer also confirmed that he "had not seen a single document prior to the election that contradicted our findings that [plaintiff] was not the sole owner of the Turtle Island property."

Following a hearing, the trial court granted defendants' motion to strike the complaint. The judgment makes the following findings as relevant here: "Plaintiff has conceded that he is a public figure for purposes of this lawsuit. . . . In the context of this action, Plaintiff must therefore show that Defendants published statements about Plaintiff's property knowing that those statements were false or that Defendants had reckless disregard for the truth [or] falsity of those statements. [Citation.] However, the undisputed evidence submitted to this Court shows that Defendants relied on public records for their statements and therefore could not act with actual malice. [¶] Plaintiff also fails to show a probability of prevailing on his defamation claim for statements regarding the ownership of his property because he cannot show damages based on these statements. The statements did not cloud record title, such as to prevent or hinder Plaintiff from alienating the property. [Citations.] [¶] Second, Plaintiff alleges that Defendant Walt Scherer defamed him by calling him a 'thief' during an encounter while campaigning. Plaintiff fails to establish a *prima facie* case for defamation with regard to this statement because such a statement, if made, was protected political rhetoric and thus non-actionable. [Citation.]"

Defendants then sought attorney fees and costs pursuant to section 425.16, subdivision (c), which states in pertinent part that a defendant who prevails on a motion to strike under section 425.16, subdivision (b), "shall be entitled to recover his or her attorney's fees and costs." The court subsequently awarded defendants costs and attorney fees in the total amount of $65,386.61.

Plaintiff appeals from both the judgment of dismissal and the award of attorney fees.[9]

## DISCUSSION

### I. *The Statute*

■ Section 425.16, the anti-SLAPP statute, "is designed to protect citizens in the exercise of their First Amendment constitutional rights of free speech and petition. It is California's response to the problems created by meritless lawsuits brought to harass those who have exercised these rights." (*Church of Scientology v. Wollersheim* (1996) 42 Cal.App.4th 628, 644 [49 Cal.Rptr.2d 620]; *Bradbury v. Superior Court* (1996) 49 Cal.App.4th 1108, 1113 [57 Cal.Rptr.2d 207]; see § 425.16, subd. (a).)

To this end, section 425.16, subdivision (b)(1), provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."

Section 425.16, subdivision (e) of the statute explains in pertinent part: "As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: . . . (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

### II. *Section 425.16 Applies Here*

The allegations of plaintiff's complaint arise from the allegedly defamatory statements made in the campaign literature concerning Measure F and by defendant Scherer while distributing campaign literature at a shopping center.

It is well settled that section 425.16 applies to actions arising from statements made in political campaigns by politicians and their supporters,

---

[9]Plaintiff's appeal from the judgment of dismissal is the subject of case No. C032607. His appeal from the award of attorney fees is the subject of case No. C033331.

including statements made in campaign literature. (*Conroy v. Spitzer* (1999) 70 Cal.App.4th 1446, 1451 [83 Cal.Rptr.2d 443]; *Beilenson v. Superior Court* (1996) 44 Cal.App.4th 944, 950 [52 Cal.Rptr.2d 357]; *Matson v. Dvorak, supra,* 40 Cal.App.4th at p. 548; *Robertson v. Rodriguez* (1995) 36 Cal.App.4th 347, 352, 357-358 [42 Cal.Rptr.2d 464].) "The right to speak on political matters is the quintessential subject of our constitutional protections of the right of free speech." (*Matson v. Dvorak, supra,* 40 Cal.App.4th at p. 548.)

## III. *The Requisite Showing Under Section 425.16*

Where section 425.16 applies, the cause of action "shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).)

"To establish such a probability, a plaintiff must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited. [Citation.] Whether he has done so is a question of law, which we determine de novo." (*Matson v. Dvorak, supra,* 40 Cal.App.4th at p. 548; accord, *Conroy v. Spitzer, supra,* 70 Cal.App.4th at p. 1451; *Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809, 823 [33 Cal.Rptr.2d 446].)

 As a public figure in a political campaign, plaintiff cannot prevail in his defamation claims against defendants unless he can also demonstrate by clear and convincing evidence that the objectionable statements were made with "actual malice." (*Beilenson v. Superior Court, supra,* 44 Cal.App.4th at p. 950.) Therefore, in addressing the issue whether plaintiff has demonstrated the existence of a prima facie case, "we 'bear in mind the higher clear and convincing standard of proof.' " (*Conroy v. Spitzer, supra,* 70 Cal.App.4th at p. 1451.) "The clear and convincing standard requires that the evidence be such as to command the unhesitating assent of every reasonable mind. [Citation.]." (*Beilenson v. Superior Court, supra,* 44 Cal.App.4th at p. 950.)

"Malice may be established by showing that [defendants] had recklessly disregarded the truth" or knew their statements were false. (*Beilenson v. Superior Court, supra,* 44 Cal.App.4th at p. 950, citing *St. Amant v. Thompson* (1968) 390 U.S. 727, 732 [88 S.Ct. 1323, 1326, 20 L.Ed.2d 262, 267].) The test is a subjective one. (*Beilenson v. Superior Court, supra,* 44 Cal.App.4th at p. 951.)

Whether plaintiff's complaint is properly characterized as a slander of title action, as he urges, does not change his burden to establish that defendants acted with malice. (See Rest.2d Torts, §§ 623A [publisher of "a false statement harmful to the interests of another is subject to liability . . . if [¶] . . . [¶] (b) he knows that the statement is false or acts in reckless disregard of its truth or falsity"], 624 [rules of liability in § 623A apply to slander of title actions]; 3 Cal. Forms of Jury Instruction (1998) § 42.31 and com. [d], p. 42-62 thereto; cf. *Spencer v. Harmon Enterprises, Inc.* (1965) 234 Cal.App.2d 614, 622 [44 Cal.Rptr. 683].)

IV. *The Defamatory Campaign Literature Claims*

 Plaintiff's evidence in opposition to the motion to strike established that at the time of the campaign in 1998, Loomis Acres had only two partners: himself and the company he controlled, Export. If credited, this evidence shows that defendants' published statements in the campaign flyers were false.

However, plaintiff must also show that defendants *knew* their statements were false or acted in reckless disregard of the truth. He has not done so: Nothing in the evidence suggests that defendants knew that the composition of the Loomis Acres partnership was other than that stated in the amended statement of partnership on file with the Placer County Recorder's Office, or that they otherwise entertained any doubt as to the truth of their statements in the campaign flyers: The amended statement of partnership was the most recent such document on file for the partnership; it was of the type intended to inform the public of the names of partnership members; and the partnership could have but did not amend the statement.

Plaintiff's evidence that an issuer of title insurance would not have relied upon the public documents does not change our analysis. Defendants were not in the business of title insurance, and were otherwise entitled to rely on publicly filed documents (see pp. 277-278, *post*). The test of malice is a subjective one. (*Beilenson v. Superior Court, supra,* 44 Cal.App.4th at p. 951 [citing a test requiring the plaintiff to " 'demonstrate with clear and convincing evidence that the defendant realized that his statement was false or that he subjectively entertained serious doubt as to the truth of [the] statement' "].) And there is no evidence to suggest that defendants knew that their statements were false or doubted the accuracy of the statements that they had developed from the publicly filed documents.

Accordingly, plaintiff has failed to show that defendants were aware that their statements were false or that they acted in reckless disregard of their

falsity, particularly since plaintiff had the burden of showing such malice by clear and convincing evidence. (*Beilenson v. Superior Court, supra,* 44 Cal.App.4th at p. 950; *Conroy v. Spitzer, supra,* 70 Cal.App.4th at p. 1451.)[10]

Plaintiff's argument to the contrary largely hinges upon his assertion that defendants acted with reckless disregard for the falsity of their statements because they relied upon the 1986 amended statement of partnership without contacting either Herbert Kern or plaintiff to ask who were the current partners of Loomis Acres.

We reject the argument for two reasons: (1) defendants were entitled to rely on publicly filed documents, and (2) there was no obligation to contact plaintiff or Kern in order to avoid a finding of malice.

First, defendants were entitled to rely upon the documents recorded by Loomis Acres in Placer County, including the amended statement of partnership. Public records such as those maintained by the Placer County Recorder's Office are intended to provide information to the public: The "immediate purpose" of a public record is "to disseminate information to the public, or to serve as a memorial of official transactions for public reference." (E.g., *People v. Olson* (1965) 232 Cal.App.2d 480, 486 [42 Cal.Rptr. 760].) Indeed, interested persons can be charged with constructive notice of the contents of such records. (See *Stevenson v. Baum* (1998) 65 Cal.App.4th 159, 165-166 [75 Cal.Rptr.2d 904]; *South v. Wishard* (1956) 146 Cal.App.2d 276, 286 [303 P.2d 805] ["Land office records, like other public records, constitute constructive notice of the facts recorded therein"].) And the accuracy of that information is protected by statutes that expressly prohibit the offering of a false or forged document for filing in a public office (Pen. Code, § 115) and which bar the "alter[ing] or falsify[ing]" of public records or documents (Gov. Code, §§ 6200 & 6201). Thus, the contents of public records are generally thought to be reliable, and statements based thereon cannot be deemed to have been made with actual malice. (Cf. *Conroy v. Spitzer, supra,* 70 Cal.App.4th at p. 1453 ["newspapers are generally thought to be reliable sources of information" and allegedly defamatory statements based upon the same information reported in newspapers are not malicious].)

That the amended statement of partnership was filed in 1986—12 years earlier—did not make defendants' reliance upon it reckless. It was prepared

---

[10]Plaintiff does not challenge on appeal defendants' use of the word, "speculators," in their campaign literature to describe plaintiff's other (former) partners, and thus, we do not consider that.

by and for Loomis Acres for the express purpose of identifying the members of its partnership to the public. It was apparently the most recently recorded document submitted by Loomis Acres for that purpose. If its contents were rendered incorrect by intervening events, only Loomis Acres's managing partner, Export—an entity in plaintiff's sole control—could act to record a further amendment correcting it, and it never did so. Under these circumstances, defendants did not act recklessly in believing Loomis Acres's most recent public disclosure of its partners.

Second, defendants did not act recklessly by failing to contact plaintiff or Herbert Kern directly about the composition of Loomis Acres: "Failure to investigate does not in itself establish bad faith." (*St. Amant v. Thompson, supra,* 390 U.S. at p. 733 [88 S.Ct. at p. 1326, 20 L.Ed.2d at p. 268].) "It is clear . . . that 'reckless conduct is not measured by whether a reasonably prudent [person] would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice.' " (*Antonovich v. Superior Court* (1991) 234 Cal.App.3d 1041, 1048 [285 Cal.Rptr. 863], quoting *St. Amant v. Thompson, supra,* 390 U.S. at p. 731 [88 S.Ct. at p. 1325, 20 L.Ed.2d at p. 267].) " '[F]ailure to investigate before publishing, even when a reasonably prudent person would have done so, is not sufficient to establish reckless disregard. [Citations.]' " (*Antonovich v. Superior Court, supra,* 234 Cal.App.3d at p. 1048.) To support a finding of actual malice, the failure to investigate must fairly be characterized as " 'the purposeful avoidance of the truth' " or the " 'product of a deliberate decision not to acquire knowledge of facts that might confirm the probable falsity of [the subject] charges.' " (*Ibid.,* brackets added in *Antonovich.*)

For example, in *Beilenson v. Superior Court, supra,* 44 Cal.App.4th 944, a campaign mailer stated that a congressional candidate's maintenance of a private law practice while working for the state was "unethical." (*Id.* at p. 947.) Although the defeated candidate established to the court's satisfaction that "there was nothing illegal or unethical in keeping his law practice while in the employ of the state," his opponents' failure to contact the Fair Political Practices Commission to discover that fact did not justify a finding that they acted with actual malice. (*Id.* at p. 952.)

In contrast, in *Antonovich v. Superior Court, supra,* 234 Cal.App.3d at pages 1052-1053, the defendant had no evidence that his opponent had shredded and destroyed files, as the defendant had charged, and the defendant had failed to investigate *after* his opponent had offered contrary proof.

The Court of Appeal concluded that the trier of fact was entitled to conclude that the defendant's " 'inaction was a product of a deliberate decision not to acquire knowledge of facts that might confirm the probable falsity of [the subject] charges,' which amounts to a 'purposeful avoidance of the truth' " so as to support a finding of actual malice. (234 Cal.App.3d at p. 1053, brackets added in *Antonovich*.)

 Here, nothing suggests that defendants entertained any doubt that the amended statement of partnership for Loomis Acres accurately stated the identity of the partners in Loomis Acres, or that they purposefully avoided "facts that might confirm the probable falsity" of their statements. (Cf. *Antonovich v. Superior Court, supra,* 234 Cal.App.3d at p. 1053.) Under the facts presented here, we are unpersuaded that defendants' failure to ask plaintiff about Loomis Acres constituted a reckless disregard of the falsity of their statements.

For these reasons, we agree with the trial court that plaintiff failed to demonstrate the probability that he would prevail on his claims based on the campaign literature. These claims were properly stricken.

## V. *Plaintiff's Claim That Scherer Called Him a "Thief" or a "Liar"*

 The third cause of action of the complaint alleges that defendants called plaintiff a thief in the course of the campaign. And plaintiff's declaration in opposition to the motion to strike makes out a prima facie claim that Scherer called him a thief as well as a liar. However, we must determine whether Scherer's statement was defamatory.

As relevant here, an orally uttered defamatory statement that charges a person with a crime or "[t]ends directly to injure him in respect to his office, profession, trade or business . . . by imputing something . . . that has a natural tendency to lessen its profits" is actionable as slander. (Civ. Code, § 46.) "It is axiomatic that for defamatory matter to be actionable, it must be communicated, or 'published,' intentionally or negligently, to 'one other than the person defamed.' [Citation.]" (*Cabesuela v. Browning-Ferris Industries of California, Inc.* (1998) 68 Cal.App.4th 101, 112 [80 Cal.Rptr.2d 60], quoting Prosser & Keeton on Torts (5th ed. 1984) § 113, pp. 797-798.)

The trial court found that plaintiff failed to show that he would prevail on such a claim.

Assuming that Scherer called plaintiff a thief and a liar, that statement was not, as a matter of law, defamatory under the undisputed circumstances here.[11]

The United States Supreme Court has "recognized constitutional limits on the *type* of speech which may be the subject of state defamation actions." (*Milkovich v. Lorain Journal Co., supra,* 497 U.S. at p. 16 [110 S.Ct. at p. 2704, 111 L.Ed.2d at p. 16].) However, the high court has rejected constitutional protection for defamatory statements simply because they are categorized as opinion as opposed to fact because, inter alia, such a distinction ignores the fact that expressions of opinion may often imply an assertion of objective fact. Nonetheless, the Supreme Court has reaffirmed a line of cases that provide "protection for statements that cannot 'reasonably [be] interpreted as stating actual facts' about an individual. [Citation.] This provides assurance that public debate will not suffer for lack of 'imaginative expression' or the 'rhetorical hyperbole' which has traditionally added much to the discourse of our Nation." (*Milkovich v. Lorain Journal Co., supra,* 497 U.S. at p. 20 [110 S.Ct. at p. 2706, 111 L.Ed.2d at p. 19].)

Hence, characterizing a developer's negotiating position as "blackmail" was constitutionally protected when used by the Greenbelt News Review because "even the most careless reader must have perceived that the word was no more than rhetorical hyperbole, a vigorous epithet used by those who considered [the developer's] negotiating position extremely unreasonable." (*Greenbelt Pub. Assn. v. Bresler* (1970) 398 U.S. 6, 13-14 [90 S.Ct. 1537, 1542, 26 L.Ed.2d 6].) Likewise, the title, "Lies, Damn Lies and Fund Advertisements," was held not to imply that a fund lied. (*Morningstar, Inc. v. Superior Court* (1994) 23 Cal.App.4th 676 [29 Cal.Rptr.2d 547].) Similarly, a campaign mailer charging the opposing candidate with "ripp[ing] off" the California taxpayer by maintaining a private law practice while on the public payroll was held "when taken in context with the other information contained in the mailer [to be] rhetorical hyperbole that is common in political debate," and not defamatory. (*Beilenson v. Superior Court, supra,* 44 Cal.App.4th at pp. 951-952.) Finally, a "vague charge" that the plaintiff " 'entered into a corrupt relationship' " with a councilman "was not a factual assertion of crime" but implied "moral criticism of objectives and methods,

---

[11]We shall also assume, for purposes of this opinion, that others overheard the epithets—although plaintiff nowhere submits facts to show how he knows that the observers actually heard the alleged epithets. (See *Jensen v. Hewlett-Packard Co.* (1993) 14 Cal.App.4th 958, 968, fn. 6 [18 Cal.Rptr.2d 83].)

not the occurrence of bribery." (*Okun v. Superior Court* (1981) 29 Cal.3d 442, 459 [175 Cal.Rptr. 157, 629 P.2d 1369].)[12]

"Whether published material is reasonably susceptible of an interpretation which implies a provably false assertion of fact—the dispositive question in a defamation action—is a question of law for the court. [Citations.]" (*Couch v. San Juan Unified School Dist., supra,* 33 Cal.App.4th at p. 1500.) In all cases, "[t]he dispositive question for the court is whether a reasonable fact finder could conclude that the published statements imply a provably false factual assertion. [Citation.]" (*Moyer v. Amador Valley J. Union High School Dist.* (1990) 225 Cal.App.3d 720, 724-725 [275 Cal.Rptr. 494].) "Courts must be cautious lest we inhibit vigorous public debate about . . . public issues. If we err, it should be on the side of allowing free-flowing discussion of current events. We must allow plenty of 'breathing space' for such commentary." (*Rudnick v. McMillan* (1994) 25 Cal.App.4th 1183, 1193 [31 Cal.Rptr.2d 193].)

In this case, taken in context, Scherer's purported use of the words "thief" and "liar" in the course of a chance confrontation with a political foe at a shopping center was the type of loose, figurative, or hyperbolic language that is constitutionally protected. (*Morningstar, Inc. v. Superior Court, supra,* 23 Cal.App.4th at p. 690.) Specifically, in the context of a heated oral exchange at a shopping center in the midst of a hard-fought initiative contest, anyone who might have overheard Scherer call plaintiff a thief or a liar would have understood Scherer to be furious at, and critical of, plaintiff's position, but would not likely have thought that Scherer's supposed outburst was accusing plaintiff of a criminal past or of dishonesty in his business dealings. There is a difference between a false assertion in campaign literature that a person was arrested or has a criminal past and the assertion of invective in the midst of a heated confrontation over a political issue, given that the standard is whether a reasonable fact finder could conclude that the communication implied a provably false factual assertion. (*Moyer v. Amador Valley J. Union High School Dist., supra,* 225 Cal.App.3d at pp. 724-725; *Couch v. San Juan Unified School Dist., supra,* 33 Cal.App.4th at p. 1500.)

Assuming that the verbal exchange took place, while we can sympathize with plaintiff's outrage over it, if we penalize a rhetorical outburst in the midst of a heated campaign, which no reasonable person would take literally,

---

[12]Although the Supreme Court in *Okun* distinguished between statements of fact and statements of opinion—a distinction now discredited—it also properly recognized that it was ultimately looking at whether a factual assertion had been made for purposes of assessing whether the publication was defamatory. (*Okun v. Superior Court, supra,* 29 Cal.3d at pp. 450, 459.)

we risk chilling the speech that breathes life into our political debate. Invective of the sort alleged by plaintiff while he and Scherer stood at opposing tables qualifies for constitutional protection. "[O]ur Constitution affords protection to statements made during the course of debate on political issues. [Citations.] In the words of Justice Hugo Black, '. . . it is a prized American privilege to speak one's mind, although not always with perfect good taste, on all public institutions.' [Citation.]" (*Beilenson v. Superior Court, supra,* 44 Cal.App.4th at p. 951, quoting *Bridges v. California* (1941) 314 U.S. 252, 270-271 [62 S.Ct. 190, 197, 86 L.Ed. 192, 207, 159 A.L.R. 1346].) Striking the third cause of action was proper.

## VI. *The Award of Attorney Fees to Defendants Was Proper*

### A. *Background*

After the court ruled in defendants' favor on the motion to strike (§ 425.16, subd. (b)(1)), defendants brought a motion for $75,272.84 in attorney fees and costs pursuant to section 425.16, subdivision (c).

In their motion, defendants disclosed that the law firm of Orrick, Herrington & Sutcliffe LLP (OH&S) represented them pursuant to a written agreement containing the following terms: "[W]e have agreed to accept this matter on a partial <u>pro bono</u> basis, meaning that we believe our representation is in the public interest and we are willing to accept it for no fees or for reduced fees, if necessary. If insurance is available to pay for attorneys' fees and other costs, we will agree to accept the insurance companies' usual and customary rates for attorneys' fees and costs, and to seek no compensation from you. . . . [¶] In the event we recover attorneys' fees and/or costs from [plaintiff], we will first reimburse each of you from that recovery for any expenses that you have paid or, if insurance coverage was available, we will first reimburse the insurance company from any recovery for any attorneys' fees and expenses that it paid. We will retain any remaining recovery as payment toward our usual fees and will accept such as full payment. . . ."

Defendants explained that OH&S agreed to represent them at the request of Norman C. Hile, an OH&S partner who resides in Loomis, opposed Measure F, and was an active participant in defendant Loomis Community Action Committee.

In opposing any award of attorney fees to defendants, plaintiff argued that by virtue of their fee agreement with OH&S, defendants had not "incurred" any attorney fees, were not liable to OH&S for any fees, and were thus prevented from recovering attorney fees. Plaintiff cited *Trope v. Katz* (1995)

11 Cal.4th 274 [45 Cal.Rptr.2d 241, 902 P.2d 259], for the proposition that attorney fees are "incurred" only when there arises an "obligation to pay [them]." (*Id.* at p. 280.)

Following a hearing, the trial court entered an order awarding defendants attorney fees and costs in the reduced amount of $65,386.61. While ruling that section 425.16, subdivision (c), requires payment of attorney fees to a prevailing defendant even if the defendant is represented by attorneys acting pro bono, the court found that "although Mr. Hile is not a party to this lawsuit, Mr. Hile's membership in Defendant Loomis Community Action Committee, an unincorporated association, is a factor that should reduce Plaintiff's liability by 20 [percent] for the above described attorney[] fees."

Only plaintiff appeals from the trial court's award.

### B. *Interpretation of Section 425.16*

In interpreting section 425.16, as in all statutory construction, our duty is to determine and effectuate the Legislature's intent. (*Lafayette Morehouse, Inc. v. Chronicle Publishing Co.* (1995) 39 Cal.App.4th 1379, 1382 [46 Cal.Rptr.2d 542].) "To determine legislative intent, a court begins with the words of the statute, because they generally provide the most reliable indicator of legislative intent." (*Hsu v. Abbara* (1995) 9 Cal.4th 863, 871 [39 Cal.Rptr.2d 824, 891 P.2d 804].) "The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible." (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387 [241 Cal.Rptr. 67, 743 P.2d 1323].)

Section 425.16, subdivision (c), states: "In any action subject to subdivision (b), a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs. If the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion, pursuant to Section 128.5."

The word "recover" suggests that the fees are something that the defendant is "[t]o get back or regain in full or in equivalence." (Black's Law Dict. (7th ed. 1999) p. 1280 [defining "recover"].) However, the relevant issue here is whether the recovery of attorney fees means only those attorney fees for which the prevailing defendant is liable or can mean those which have been accrued on behalf of the prevailing defendant.

The statute draws no such distinction. Moreover, since attorneys are agents of their client (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1092, 1093 [95 Cal.Rptr.2d 198, 997 P.2d 511]), the phrase, "entitled to recover his or her attorney fees," can certainly include recovery of the fees that the defendant's agent—the attorney—has accrued on defendant's behalf, even if the agent has waived payment from defendant, but not their recovery otherwise.

*PLCM Group, Inc. v. Drexler, supra,* 22 Cal.4th 1084, is instructive. There, the California Supreme Court ruled that an entity represented by in-house counsel may recover attorney fees under Civil Code section 1717, subdivision (a), even though it has not paid those fees. Civil Code section 1717 provides that "[i]n any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract . . . shall be entitled to reasonable attorney's fees . . . ." In ruling that the corporation could recover its fees, the state high court reasoned: "We discern no basis for discriminating between counsel working for a corporation in-house and private counsel engaged with respect to a specific matter or on retainer. Both are bound by the same fiduciary and ethical duties to their clients. [Citation.] Both are qualified to provide, and do provide, equivalent legal services. And both incur attorney fees and costs within the meaning of Civil Code section 1717 in enforcing the contract on behalf of their client." (22 Cal.4th at p. 1094.)

If the reasonable attorney fees of in-house counsel, who is paid a salary and who does not charge the corporate client, can be recovered pursuant to a statute that speaks in terms of "attorney's fees and costs, which are *incurred* to enforce [a] contract" (Civ. Code, § 1717 italics added), it follows that section 425.16, subdivision (c), can and should be construed to permit recovery of attorney fees that are accrued by outside counsel representing a party on a partial pro bono basis, where counsel has not waived the right to seek recovery of the attorney fees from third parties, such as insurers, but only from the client. After all, fees have accrued and resources have been expended by the attorneys. There is nothing in section 425.16 that suggests that those attorney fees cannot be recovered.

Although not yet final (Cal. Rules of Court, rule 24(a)), the very recent decision of the California Supreme Court in *Ketchum v. Moses* (2001) 24 Cal.4th 1122 [104 Cal.Rptr.2d 377, 17 P.3d 735], supports our conclusion. There, the prevailing defendant in a motion to strike under section 425.16 was represented on a contingent fee basis, and the plaintiff argued that the

defendant was not entitled to an attorney fees award that included a fee enhancement based on the contingent risk of the representation. The Supreme Court concluded that he was entitled to "mandatory attorney fees," including a fee enhancement for the contingent risk of the representation. The state high court explained in part, consistent with our analysis: "Thus, under Code of Civil Procedure section 425.16, subdivision (c), any SLAPP defendant who brings a successful motion to strike is entitled to mandatory attorney fees. The fee-shifting provision was apparently intended to discourage such strategic lawsuits against public participation by imposing the litigation costs on the party seeking to 'chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances.' (*Id.*, subd. (a).) The fee-shifting provision also encourages private representation in SLAPP cases, including situations when a SLAPP defendant is unable to afford fees or the lack of potential monetary damages precludes a standard contingency fee arrangement." (*Ketchum v. Moses, supra*, at p. 1131.) Accordingly, although the high court was not asked to address the issue we face here,[13] its decision nonetheless construes section 425.16, subdivision (c), as we do today, to award fees even where the defendant would not otherwise be responsible for them.

The only published case to squarely consider whether an attorney fees award under section 425.16, subdivision (c), is proper when a defendant has been relieved of his obligation to pay attorney fees has also ruled in favor of recovery. In *Macias v. Hartwell* (1997) 55 Cal.App.4th 669 [64 Cal.Rptr.2d 222], the appellate court upheld the trial court's striking of a defamation action, brought by the losing candidate in a union election, arising out of statements made in a political flyer. (*Id.* at pp. 674-675.) The losing candidate challenged the trial court's award of attorney fees under section 425.16, subdivision (c), on the ground that the defendant did not personally owe attorney fees because a local union organization paid his litigation costs. (*Macias v. Hartwell, supra*, at p. 675.) The court in *Macias* rejected the argument: "Appellant cites no authority, and we have found none, that a defendant who successfully brings an anti-SLAPP motion is barred from recovering fees if the fees were paid by a third party. Based on her construction of the law, respondent would not be entitled to attorney's fees if the defense costs were paid by his homeowner's insurance carrier, the union's insurance carrier, or a relative. No court has so held." (*Id.* at pp. 675-676.)

---

[13]We acknowledge that language used in any opinion is to be understood in light of the facts and the issue before the court and is not authority for a proposition not therein considered. (*Ginns v. Savage* (1964) 61 Cal.2d 520, 524, fn. 2 [39 Cal.Rptr. 377, 393 P.2d 689].) However, the court could not decide that a fee enhancement for the contingent risk of a representation was permissible under section 425.16, subdivision (c), without determining that a defendant represented on a contingency basis was entitled to recover fees.

We agree with the result in *Macias,* which is consistent with the reasoning in *Ketchum v. Moses, supra,* 24 Cal.4th 1122. We do not presume the Legislature intended to create a disparity between defendants who advance their own attorney fees and those whose counsel look to an outside source for payment. In each case, the fees have accrued and can be recovered.

Additionally, the separate language in section 425.16 that awards attorney fees to a prevailing *plaintiff* makes it clear that a plaintiff need not have paid the fees in order to receive an award, and we see no reason for more favorable treatment for plaintiffs than for those whom the statute was intended to benefit—defendants. Specifically, section 425.16, subdivision (c), provides that the court "shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion" if the motion is frivolous or solely intended to cause unnecessary delay. The plain language of this provision clearly states that a prevailing plaintiff is entitled to an award of reasonable attorney fees, without regard to whether the plaintiff is liable for those fees. And we see no reason why a prevailing plaintiff would be awarded fees pursuant to a more lenient standard than a defendant. Indeed, just the opposite is the case. A plaintiff only receives attorney fees if the motion is frivolous or intended solely to cause delay—a more stringent standard. Once that standard is satisfied, however, there is no reason why a prevailing plaintiff represented pro bono would be awarded attorney fees, but that a prevailing defendant—for whose benefit the statute was enacted—would be denied them.

Moreover, the words of a statute must be construed "keeping in mind the statutory purpose." (*Dyna-Med, Inc. v. Fair Employment & Housing Com., supra,* 43 Cal.3d at p. 1387.) The recovery of attorney fees by a defendant who successfully brings an anti-SLAPP motion—regardless of whether the defense costs are underwritten by another—is consistent with its evident statutory purpose: "The purpose of section 425.16 is clearly to give relief, including financial relief in the form of attorney's fees and costs, to persons who have been victimized by meritless, retaliatory SLAPP lawsuits because of their 'participation in matters of public significance.' [Citation.]" (*Liu v. Moore* (1999) 69 Cal.App.4th 745, 750 [81 Cal.Rptr.2d 807].) Denial of fees to outside counsel who offer their services on a partial pro bono basis would discourage such representation—in conflict with the statute's purpose of not allowing participation in matters of public significance to "be chilled through abuse of the judicial process." (§ 425.16, subd. (a).)

Finally, if there were any doubt whether a defendant should be able to recover attorney fees under section 425.16 for fees accrued by outside counsel but for which counsel has agreed not to hold defendant liable, the

Legislature has expressly stated that section 425.16 "shall be construed broadly." (§ 425.16, subd. (a).) That would appear to be conclusive as to the issue before us.

The cases construing section 425.16 relied upon by plaintiff provide no support for the proposition that a prevailing defendant must have an enforceable obligation to pay attorney fees before they can be awarded to that defendant under section 425.16, subdivision (c). (E.g., *Lafayette Morehouse, Inc. v. Chronicle Publishing Co., supra,* 39 Cal.App.4th at pp. 1383-1384 [holding that the Legislature intended the fee language in § 425.16, subd. (c), to apply only to the motion to strike, not to the entire case]; *Robertson v. Rodriguez, supra,* 36 Cal.App.4th at p. 362 [the trial court is not required simply "to award the amount requested" by a defendant but to award reasonable fees]; *Dove Audio, Inc. v. Rosenfeld, Meyer & Susman* (1996) 47 Cal.App.4th 777, 785 [54 Cal.Rptr.2d 830] [citing *Robertson v. Rodriquez*].)

As he did before the trial court, plaintiff relies chiefly upon the California Supreme Court's opinion in *Trope v. Katz, supra,* 11 Cal.4th 274, for the proposition that defendants must have incurred liability for their attorney fees in order to recover them. In that case, the court considered whether an attorney who chooses to litigate in propria persona an action to enforce a contract containing an attorney fees provision can recover attorney fees under Civil Code section 1717. Answering that question in the negative, the court pointed out that "by its terms section 1717 applies only to contracts specifically providing that attorney fees 'which are *incurred* to enforce that contract' shall be awarded to one of the parties or to the prevailing party" (11 Cal.4th at p. 280) and that the ordinary meaning of the word "incur" in the sense of incurring a fee "is to 'become liable' for it [citation], i.e., to become obligated to *pay* it." (*Id.* at pp. 280, 285, italics in original.)

However, in light of the state high court's decision in *PLCM Group, Inc. v. Drexler, supra,* 22 Cal.4th 1084 (and the recent but not yet final one in *Ketchum v. Moses, supra,* 24 Cal.4th 1122), this passage from *Trope* cannot compel the result plaintiff seeks.

First, in *PLCM Group, Inc. v. Drexler,* the state Supreme Court itself rejected the expansive reading of *Trope v. Katz* urged by plaintiff: "Our reference in *Trope* to the general definition of 'attorney's fees' as the sum a litigant 'actually pays or becomes liable to pay' for legal representation (11 Cal.4th at p. 280) was not intended to imply that fees can be recovered only when, and to the extent that, a litigant incurs fees on a fee-for-service basis, a question not raised therein. . . ." (*PLCM Group, Inc. v. Drexler, supra,* 22 Cal.4th at p. 1097, fn. 5.) Instead, the state high court characterized *Trope v.*

*Katz* as "expressly involv[ing] only the 'narrow issue' whether pro se attorney litigants could recover attorney fees. . . ." (22 Cal.4th at p. 1097.)

Second, as the court explained in *PLCM Group, Inc. v. Drexler*, its holding in *Trope v. Katz* turned on the fact that "the term 'attorney fees' implies the existence of an attorney-client relationship, i.e., a party receiving professional services from a lawyer." (*PLCM Group, Inc. v. Drexler, supra*, 22 Cal.4th at p. 1092, citing *Kay v. Ehrler* (1991) 499 U.S. 432, 436 [111 S.Ct. 1435, 1437, 113 L.Ed.2d 486, 491-492].) In holding that a prevailing party represented by in-house counsel may recover contractual attorney fees under Civil Code section 1717, the court in *PLCM Group, Inc.* focused on the fact that an attorney-client relationship existed between the party seeking fees and his counsel, as previously explained herein, *ante*.

Thus, since, as the high court has clarified, attorney fees can be recovered pursuant to a statute that allows their recovery, even where the client is not charged those fees, as long as there exists an attorney-client relationship, an analogous interpretation of section 425.16 is warranted here—a conclusion supported by the language of the Supreme Court's decision in *Ketchum v. Moses, supra*, 24 Cal.4th 1122.

In conclusion, the plain language and purpose of section 425.16, as well as the decisional law, support the recovery of attorney fees that have accrued in representing the defendants here, notwithstanding counsel's agreement not to look to defendants for payment.

VII. *Attorney Fees on Appeal*

In their brief, defendants request an award of attorney fees and costs on appeal. The appellate courts have construed section 425.16, subdivision (c), to include an attorney fees award on appeal. (E.g., *Dove Audio, Inc. v. Rosenfeld Meyer & Susman, supra*, 47 Cal.App.4th at p. 785; *Church of Scientology v. Wollersheim, supra*, 42 Cal.App.4th 628, 659.) " 'A statute authorizing an attorney fee[s] award at the trial court level includes appellate attorney fees unless the statute specifically provides otherwise. [Citations.]' " (*Church of Scientology v. Wollersheim, supra*, 42 Cal.App.4th at p. 659.) Section 425.16 does not specifically provide otherwise.

Accordingly, defendants are entitled to, and are awarded, their attorney fees on this appeal in an amount to be determined by the trial court on remand.

## DISPOSITION

The judgment is affirmed. The trial court's award of attorney fees to defendants pursuant to section 425.16 is also affirmed. Defendants are awarded their costs and attorney fees on appeal. The matter is remanded to the trial court to determine the amount thereof.

Blease, Acting P. J., and Raye, J., concurred.

On April 5, 2001, the opinion was modified to read as printed above.