Filed 12/23/22  Koerber v. Project Veritas CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION THREE

| | |
|---|---|
| KIMBERLY KOERBER,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>PROJECT VERITAS et al.,<br><br>    Defendants and Appellants. | B298540<br><br>Los Angeles County<br>Super. Ct. No. BC681083 |

APPEAL and CROSS-APPEAL from orders of the Superior Court of Los Angeles County, Elaine Lu, Judge. Affirmed.

Gary Rand & Suzanne E. Rand-Lewis, Suzanne E. Rand-Lewis and Timothy Rand-Lewis for Plaintiff and Appellant.

Litchfield Cavo, G. David Rubin and Elizabeth M. Sanguinetti for Defendants and Appellants.

# INTRODUCTION

This is plaintiff Kimberly Koerber's second lawsuit against defendants Project Veritas, Project Veritas Action Fund (Action Fund), James O'Keefe III (O'Keefe), and Christian Hartsock (defendants). The trial court granted in part defendants' special motion to strike Koerber's complaint under Code of Civil Procedure[1] section 425.16 (anti-SLAPP statute), dismissing Koerber's claims against Project Veritas, Action Fund, and O'Keefe for intentional infliction of emotional distress (IIED), negligence, and intentional interference with prospective economic advantage (economic interference), as well as all of Koerber's claims against Hartsock. As to Project Veritas, Action Fund, and O'Keefe, the court denied the anti-SLAPP motion with respect to Koerber's claims for defamation and unfair business practices. The court awarded defendants $40,942 in attorney fees and costs.

Koerber appeals from the court's orders granting in part defendants' anti-SLAPP motion and awarding defendants attorney fees and costs. She raises several procedural and substantive arguments challenging both orders. Project Veritas, Action Fund, and O'Keefe cross-appeal from the court's order denying in part their anti-SLAPP motion, arguing Koerber failed to show a reasonable probability of prevailing on her claims for defamation and unfair business practices. As we explain, the parties' arguments lack merit. We therefore affirm the court's orders.

---

[1] All undesignated statutory references are to the Code of Civil Procedure.

2

## FACTS AND PROCEDURAL BACKGROUND

### 1.    The Parties

Koerber used to work as a sales consultant for an educational content company, where she sold "National Geographic materials." According to Koerber, she never occupied a "management" position at the company or worked as an "official" in the book publishing industry. Nor did she ever have a policy making role with respect to the development of educational policies, such as the Common Core curriculum.

Project Veritas is a non-profit "media organization" that engages in "undercover investigative journalism." Project Veritas claims its "reports average over 100,000 views online" and are often covered by "other news outlets." One of Project Veritas's goals is to "educate and inform the public about issues of public interest." Like Project Veritas, Action Fund is a non-profit media organization involved in investigative journalism; O'Keefe is Action Fund's president. According to Koerber, Hartsock is an officer and employee of Project Veritas.

### 2.    Koerber's Interview and the Termination of Her Employment

In the fall of 2015, Project Veritas "launched an investigation into the Common Core curriculum." The investigation focused on the "relationship between textbook companies and Common Core standards, how textbook companies promoted Common Core to public officials and legislators, and the lobbying tactics of textbook companies," as well as "the reaction of those within the textbook industry to the backlash against Common Core."

3

In November 2015, an unknown caller asked Koerber to participate in an interview, which the caller claimed would help then-California Attorney General Kamala Harris formulate "policy" on "an issue". The caller told Koerber the meeting would be "private" and "confidential."

The next day, Koerber went to a Starbucks and sat in a patio area that she believed was private. There, she met two people, one of whom gave her a business card, which stated the cardholder's name was "Alyssa Harris," a "project manager" with "Breakthrough Dev Group." The interviewers told Koerber her statements would be used "as anonymous research to assist Kamala Harris in formulating policy." The interview was video and audio recorded without Koerber's knowledge and consent.

In January 2016, Project Veritas published a series of reports on Common Core. The third report, which was originally published on YouTube in late January 2016, is a video featuring clips of Koerber's November 2015 interview, as well as clips of several candidates from the 2016 presidential primary election and O'Keefe talking about Common Core (January 2016 Video). The video also features clips of two other book publishing employees. In those clips, one of the employees states: "I hate kids. I'm in it to sell books, don't even kid yourself for a heartbeat." The other employee states: "There's always money in it. It's never about the kids."

Koerber was fired from her job as a sales consultant after Project Veritas published the January 2016 Video.

### 3. Koerber's First Lawsuit

In February 2017, Koerber sued, among others, her former employer, Project Veritas, and several entities and individuals associated with Project Veritas, including Action Fund, O'Keefe,

4

and Hartsock. Koerber asserted 23 causes of action, including 11 against Project Veritas based on allegations that the organization recorded, edited, and published the January 2016 Video under false pretenses and without Koerber's knowledge or consent.

In October 2017, Project Veritas moved to strike Koerber's claims against the organization under the anti-SLAPP statute. The court granted Project Veritas's motion and dismissed the organization from Koerber's lawsuit. We affirmed the order granting Project Veritas's anti-SLAPP motion in September 2019.

### 4. Project Veritas's Second Video

In September 2017, O'Keefe, through Action Fund, released a video in which he addresses Koerber's first lawsuit, as well as other plaintiffs' lawsuits, against the organization (September 2017 Video). The video was posted on Action Fund's website, YouTube, Twitter, and Facebook.

At the beginning of the video, O'Keefe walks into an office and stands in front of a desk containing a laptop and several binders and documents, including copies of various court filings. O'Keefe addresses the camera and talks about two lawsuits filed against defendants.

O'Keefe then addresses Koerber's first lawsuit against defendants. As O'Keefe talks, a photograph of the cover page to a motion filed in Koerber's first lawsuit appears in the background of the video while O'Keefe holds a copy of what appears to be Koerber's complaint from that lawsuit with a large yellow sticky note attached to the front that says, "KOERBER." O'Keefe says this about Koerber and her first lawsuit: "We got another lawsuit from this official who … [W]hen we did the Common Core investigation last year, that's the one where they said we don't care about kids[;] it's all about money. [¶] Well, one of the people

in the book publishing industry has sued us. I don't know why she's suing us. She should sue herself; she's the one who said what she said, and she didn't deny it."

Later in the video, O'Keefe speculates that the plaintiffs may have conspired to sue defendants at the same time and claims the lawsuits were beneficial "because [defendants are] raising more funds." At the end of the video, O'Keefe asks his viewers to "stay tuned" because defendants would soon release more content from their "American Pravda Series," which was "aimed at the media."

## 5.   The Current Lawsuit

In October 2017, Koerber filed a second lawsuit against Project Veritas, Action Fund, O'Keefe, and Hartsock.[2] Koerber's complaint asserts five causes of action against defendants: (1) IIED; (2) unfair business practices; (3) negligence; (4) defamation; and (5) economic interference.

Koerber's claims against defendants arise out of the statements that O'Keefe made about her in the September 2017 Video. Specifically, the crux of Koerber's claims is that O'Keefe defamed her when he claimed she was an "official" in the book publishing industry and insinuated that she said, " 'we don't care about kids all we care about is money.' "

Koerber claimed the September 2017 Video brought a "renewed interest" in the January 2016 Video—i.e., the video that formed the basis for Koerber's first lawsuit. She also claimed defendants released the September 2017 Video to, among other things, "solicit 'donations' to fund [their] 'defense' " against

---

[2] Koerber also sued Allison Maass, who is not a party to this appeal.

Koerber's and the other plaintiffs' lawsuits. Among other things, Koerber sought monetary relief, including punitive damages, and an injunction requiring Project Veritas to remove and expunge all recordings of, and statements about, her.

In July 2018, defendants moved to strike all the claims in Koerber's complaint under the anti-SLAPP statute.[3] Defendants argued Koerber's entire lawsuit arose out of protected conduct— i.e., defendants' journalistic activities relating to their Common Core investigation and public commentary on Koerber's lawsuit arising out of that investigation. Defendants also argued Koerber couldn't establish a reasonable probability of succeeding on the merits of her claims because: (1) she couldn't prove the elements of any of those claims; (2) defendants' conduct was protected by the litigation privilege; and (3) Koerber's claims in the instant lawsuit were precluded by the adverse rulings against Koerber in her first lawsuit against defendants.

In support of their motion, defendants filed, among other things, declarations executed by Russell Verney, Project Veritas's and Action Fund's executive director; G. David Rubin and Elizabeth M. Sanguinetti, defendants' counsel; and Hartsock. Hartsock testified he wasn't involved in the production or release of the September 2017 Video.

Defendants also filed a request for judicial notice of the following items: (1) a copy of the January 2016 Video; (2) a copy of the September 2017 Video; (3) several documents and minute orders from Koerber's first lawsuit against defendants; (4) several news articles addressing defendants' activities; and (5) the

---

[3] Defendants also filed a demurrer to Koerber's complaint, a copy of which Koerber hasn't included in the record on appeal.

existence of three lawsuits other plaintiffs had filed against some of the defendants.

In March 2019, Koerber opposed the anti-SLAPP motion. She argued the motion was untimely because it was not filed within 60 days of when Koerber filed her complaint. Koerber also claimed the court lacked jurisdiction to rule on the motion because it did not schedule a hearing until more than 30 days after the motion was filed.

As to the merits, Koerber argued her claims were not subject to the anti-SLAPP statute because defendants' challenged conduct was commercial speech under section 425.17, subdivision (c). Alternatively, Koerber asserted none of her claims arose out of protected activity, and, in any event, she established a probability of prevailing on all her claims.

In support of her opposition, Koerber filed her own declaration as well as declarations executed by her counsel, Suzanne E. Rand-Lewis and Timothy D. Rand-Lewis. Koerber testified that she was never an "official" or other "influential person" in the publishing industry, and she never had a role in "policy making" for the Common Core curriculum. Koerber also denied ever stating, " 'we don't care about kids, all we care about is money.' " Koerber claimed she lost "contracts, income, benefits, 401k contributions, health insurance, car, phone, email, vacation and bonuses, and [became] emotionally distressed and physically ill" because of the September 2017 Video.

Koerber lodged over 150 objections to the evidence that defendants filed in support of their anti-SLAPP motion, and she opposed defendants' request for judicial notice.

As part of their reply papers, defendants lodged over 300 objections to the evidence Koerber submitted in support of her

8

opposition, many of which challenged Koerber's and her counsel's statements as hearsay, lacking foundation, or legal conclusions.

After a hearing in April 2019, the court took defendants' anti-SLAPP motion under consideration. In May 2019, the court issued a 50-page ruling.

The court sustained more than 30 of Koerber's objections to defendants' evidence and more than 100 of defendants' objections to Koerber's evidence. The court also granted defendants' request for judicial notice in its entirety, taking judicial notice of the existence and content of, but not the truth of any statements included in, the January 2016 Video and the September 2017 Video. The court also took judicial notice of the existence of, but not the truth of any statements included in, the various news articles discussing defendants' activities, the documents from Koerber's first lawsuit against defendants, and the three lawsuits that were filed by other plaintiffs against some of the defendants.

The court rejected Koerber's claims that the motion was untimely and that the court did not hear the motion in a timely manner. The court also rejected Koerber's contention that all her claims were exempt from the anti-SLAPP statute because they arose out of defendants' commercial speech.

As to Hartsock, the court found he wasn't involved in any of the conduct giving rise to Koerber's claims. Accordingly, the court granted the anti-SLAPP motion as to all of Koerber's claims against Hartsock.[4]

As to the remaining defendants, the court granted the motion in part and denied it in part. Under the first prong of the anti-SLAPP statute, the court found defendants' September 2017

---

[4] Koerber doesn't challenge this part of the court's ruling on appeal.

Video qualified as protected speech. The video addressed an issue under review by a judicial body, and it was published in a public forum—i.e., on various websites and social media platforms—and it discussed issues of public interest—i.e., lawsuits filed against defendants and defendants' investigations of topics that garnered news coverage and widespread interest among the public.

Under the second prong, the court rejected defendants' arguments that Koerber's claims in this lawsuit arose out of privileged conduct or were barred by the parties' litigation in Koerber's first lawsuit, reasoning that the two actions challenged different conduct. The court then found Koerber demonstrated a probability of prevailing on her claims for defamation and unfair business practices and failed to show a likelihood of success on her claims for IIED, economic interference, and negligence.

In December 2019, the court granted defendants' motion for attorney fees and costs, awarding them $40,942 as prevailing parties under the anti-SLAPP statute (§ 425.16, subd. (c)).

Koerber appeals from the order granting in part and denying in part defendants' anti-SLAPP motion and the order awarding defendants fees and costs. Defendants cross-appeal from the order on their anti-SLAPP motion.

## DISCUSSION

### Timeliness of the Anti-SLAPP Motion

As a preliminary matter, Koerber argues the court should have denied defendants' anti-SLAPP motion as untimely. Alternatively, Koerber contends the court lacked jurisdiction to rule on the motion because more than 30 days passed between when the motion was filed and heard. Both these arguments lack merit.

10

1.    **Relevant Background**

Koerber filed her complaint on October 25, 2017. On November 29, 2017, Koerber filed a proof of service of summons, which stated that an agent tried to personally serve Hartsock on November 2, 2017, but Hartsock refused to accept copies of the complaint, the summons, and other documents. On December 20, 2017, Koerber filed proofs of service concerning Project Veritas, Action Fund, and O'Keefe. As to Project Veritas and Action Fund, Koerber mailed the summons, the complaint, and other documents on September 7, 2017 and again on December 20, 2017. As to O'Keefe, Koerber mailed the same documents on December 20, 2017.

On January 9, 2018, defense counsel sent Koerber's counsel an email concerning the "purported service of the summons and complaint." Defense counsel claimed service "was either non-existent [or] procedurally improper and therefore ineffective and subject to a motion to quash for lack of proper service." Defense counsel asked Koerber's counsel to withdraw the "purported service of summons and complaint as to [defendants]" and send defendants "Notice of Acknowledgement of Receipt forms and related documents," which defendants would agree to sign. Defense counsel stated that once the parties executed the acknowledgment of receipt forms, "the deadline for [defendants] to file responsive pleadings to [Koerber's] complaint will be determined by the dates the Notice of Acknowledgement forms are returned."

On January 16, 2018, Koerber's counsel replied to defense counsel's email with a one word response: "Agreed."

On May 3, 2018, Koerber sent defendants acknowledgement of receipt forms. On May 17, 2018, before

11

defendants signed the acknowledgment of receipt forms, Koerber filed a supplemental proof of service of summons and complaint, asserting service was effectuated on all defendants on May 3, 2018. On May 23, 2018, defendants signed the forms, acknowledging receipt of the summons, the complaint, and other documents.

On July 19, 2018, defendants filed their anti-SLAPP motion. Around the same time, defense counsel tried to reserve a date for a hearing on the motion. According to the court's online reservation system, the soonest available date for a hearing on an anti-SLAPP motion was February 22, 2019, or more than 30 days after defendants served the motion. Defense counsel also spoke to the court clerk, who confirmed that the soonest the court could hear the anti-SLAPP motion was in February 2019.

On February 14, 2019, after her opposition was due, Koerber requested and received a continuance of the hearing on defendants' anti-SLAPP motion and an extension of time for filing her opposition. The court ordered Koerber to file her opposition "no later than February 26, 2019." Koerber did not file her opposition until March 11, 2019.

In her opposition, Koerber argued that defendants' anti-SLAPP motion was untimely because it was not filed within 60 days of when Koerber first tried to serve defendants with the summons and complaint—i.e., between early September and late December 2017. Koerber claimed that although she agreed to withdraw her original proofs of service and effectuate service through the acknowledgement of receipt forms that she sent defendants in May 2018, she did so only for the purpose of allowing defendants additional time to file responsive pleadings, such as a demurrer or an answer, but not an anti-SLAPP motion.

Koerber also argued that the court lacked jurisdiction to rule on the anti-SLAPP motion because the court did not hear the motion within 30 days of when it was filed.

On April 22, 2019, the court heard argument on defendants' anti-SLAPP motion. On May 14, 2019, the court issued its written ruling on the motion. The court found that defendants timely filed their anti-SLAPP motion, and, in any event, any late filing was excused based on the "ambiguity in the parties' stipulation regarding the effect of service by notice and acknowledgement of receipt." The court also found it was proper to hear the motion more than 30 days after the motion was filed due to "congestion" in the court's docket and Koerber's own conduct.

## 2. Defendants' anti-SLAPP motion was timely, and, in any event, the court properly excused any delay.

An anti-SLAPP motion "may be filed within 60 days of the service of the complaint or, in the court's discretion, at any later time upon terms it deems proper." (§ 425.16, subd. (f).) The plaintiff bears the burden of establishing the court abused its discretion in allowing the defendant to file a late anti-SLAPP motion. (*Hoang v. Tran* (2021) 60 Cal.App.5th 513, 526.) As we explain, defendants timely filed their anti-SLAPP motion.

In January 2018, at defense counsel's request, Koerber agreed to withdraw the proofs of service that she filed in November and December 2017. In early May 2018, Koerber's counsel sent defendants "Notice and Acknowledgment of Receipt" forms. Each form indicated defendants received the summons, the complaint, and other documents and stated that the "summons and other documents identified … are being served

13

*pursuant to section 415.30 of the California Code of Civil Procedure.*" (Italics added.)

Section 415.30 governs service of summons by mail. Under subdivision (c) of that statute, service "is deemed complete on the date a written acknowledgement of receipt of summons is executed, if such acknowledgement thereafter is returned to sender." (§ 415.30, subd. (c).)

Defendants signed Koerber's acknowledgement of receipt forms on May 23, 2018, and Koerber doesn't contend they failed to return those forms to her. Thus, under section 415.30, subdivision (c), service of the complaint was deemed complete on May 23, 2018. Defendants, therefore, had 60 days from that date to timely file their anti-SLAPP motion. Because defendants filed their anti-SLAPP motion on July 19, 2018, their motion was timely.

Koerber insists she agreed to withdraw her original proofs of service and send defendants the acknowledgment of receipt forms for the limited purpose of extending the time to file "responsive pleadings," such as an answer or a demurrer. According to Koerber, she never agreed to extend the time to file an anti-SLAPP motion beyond 60 days from the date she first attempted to serve defendants—i.e., between September and December 2017. Since defendants did not file their anti-SLAPP motion until July 2018, or more than 60 days after Koerber initially attempted to serve the last defendant, Koerber argues that motion was untimely. We disagree.

To be sure, defense counsel noted in his January 9, 2018 email that the deadline for defendants to file any responsive pleadings to Koerber's complaint would be determined by the date defendants returned the acknowledgment of receipt forms.

14

But nothing in the correspondence between defense counsel and Koerber's counsel indicates the parties intended for the execution of the acknowledgement of receipt forms to determine only the time for defendants to file responsive pleadings such as a demurrer or an answer.

In any event, as the court explained below, the correspondence between defense counsel and Koerber's counsel created, at most, an ambiguity as to whether the parties intended the date of service of the summons and complaint by execution of the acknowledgment of receipt forms to apply only to responsive pleadings or to all other filings, including an anti-SLAPP motion. Because the parties never explicitly agreed to use the new service date only for purposes of filing a responsive pleading, such as a demurrer or an answer, defendants reasonably could have believed the time for filing an anti-SLAPP motion was determined by the date they signed the acknowledgement of receipt forms. (See § 415.30, subd. (c).) Thus, even if defendants did not file their anti-SLAPP motion within 60 days of when Koerber first attempted to serve defendants with the complaint, the court did not abuse its discretion in considering the motion. (See *Hoang v. Tran*, *supra*, 60 Cal.App.5th at p. 526 [court did not abuse its discretion in crediting defendant's mistaken but reasonable belief that he timely filed his anti-SLAPP motion].)

3.    **The court did not err in hearing defendants' anti-SLAPP motion more than 30 days after it was filed.**

Under section 425.16, subdivision (f), the court clerk must schedule a hearing on an anti-SLAPP motion "not more than 30 days after the service of the motion unless the docket conditions of the court require a later hearing."

15

As defense counsel testified, defendants tried to schedule a hearing on their motion within 30 days of the date it was filed— i.e., July 19, 2018—but the first hearing for an anti-SLAPP motion that was available through the court's online reservation system was not until February 2019. Defense counsel also spoke to the court clerk, who confirmed that the court did not have any dates available for a hearing on an anti-SLAPP motion earlier than February 2019. Additionally, in its ruling on the anti-SLAPP motion, the court explained that it was "well aware of the congestion of its own motion calendar, especially for summary judgments and anti-SLAPP motions, and the wait-time of approximately six months for the soonest available hearing date for such motions. In light of this congestion, any ex parte application by [defendants] to advance the hearing on the instant motion would have been futile."

In short, the court's docket conditions required a hearing later than 30 days after defendants filed their anti-SLAPP motion. The court, therefore, properly heard defendants' motion. (§ 425.16, subd. (f).)

**Evidentiary Rulings**

Koerber also challenges the court's evidentiary rulings, arguing the court erred when it sustained over 100 of defendants' objections to evidence Koerber submitted in opposition to the anti-SLAPP motion. As we explain, Koerber has forfeited any challenge to the court's evidentiary rulings because she (1) fails to identify any specific evidence the court purportedly excluded in error, and (2) fails to develop any meaningful factual and legal analysis addressing the court's rulings.

It is fundamental that a trial court's ruling "is presumed to be correct, and the appellant has the burden to prove otherwise

16

by presenting legal authority on each point made and factual analysis, supported by appropriate citations to the material facts in the record; otherwise, the argument may be deemed forfeited." (*Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 655–656 (*Keyes*).) The appellant has the burden to support claims of error with citations to the record and pertinent legal authority and to explain the relevance of facts cited in her brief. (*Ibid.*; *Bains v. Moores* (2009) 172 Cal.App.4th 445, 455 (*Bains*).) The court has no obligation " ' "to cull the record for the benefit of the appellant." ' " (*Bains*, at p. 455; see also *Keyes*, at pp. 655–656.) The appellant forfeits any points that are not properly raised or that are not supported by cognizable legal argument and factual analysis. (*Keyes*, at pp. 655–656.)

Here is an example that illustrates the deficiencies in Koerber's argument challenging the court's evidentiary rulings. Koerber argues that "[t]o the extent that the Trial Court sustained Defendants' objections that the Declaration of Koerber [string citation to nearly 100 pages of defendants' objections to Koerber's declaration] and [Koerber's counsel] [string citation to nearly 80 pages of defendants' objections to counsel's declaration], lack personal knowledge of the matters to which they testified, and/or that their testimony lacks foundation and/or constitutes hearsay or are otherwise inadmissible … , the Order must be reversed." Koerber then cites several authorities generally defining the "personal knowledge" requirement, before asserting: "In their declarations, Koerber and [counsel] testify that the declarations are made on their own personal knowledge of the facts. … As such, the evidence to which Koerber and [counsel] testify is admissible."

17

Koerber fails to discuss any specific evidence or statement that she believes the court erroneously excluded, let alone any objections that formed the basis for the court's rulings. Instead, she cites to nearly 200 pages of defendants' objections to her and her counsel's declarations, apparently expecting us to "cull" the record to determine which rulings she is challenging. That is not our job. (*Bains*, *supra*, 172 Cal.App.4th at p. 455.) Koerber also offers no factual analysis to support her argument. That is, she doesn't identify any of the statements for which she or her counsel had personal knowledge of the underlying facts. Nor does Koerber explain how she or her counsel obtained personal knowledge of any of the facts to which they testified. (*Keyes*, *supra*, 189 Cal.App.4th at pp. 655–656.)

Koerber also claims the court erred in excluding documents attached to her counsel's declaration. We disregard this argument because Koerber doesn't identify the documents she claims were erroneously excluded. (*Bains*, *supra*, 172 Cal.App.4th at p. 455 [the appellant must explain the relevance of facts cited in her brief].)

In short, Koerber fails to develop any cognizable argument challenging the court's evidentiary rulings. Koerber has, therefore, forfeited any challenge to those rulings.

**The Ruling on the Merits of the Anti-SLAPP Motion**

Both parties challenge the court's ruling on the merits of defendants' anti-SLAPP motion. Koerber contends the court erred in finding her claims arise out of activity protected by the anti-SLAPP statute and, in any event, she demonstrated a probability of success on the merits of all her causes of action. In their cross-appeal, defendants argue the court erred in finding Koerber was likely to prevail on her causes of action for

18

defamation and unfair business practices. As we explain, the court's ruling on the anti-SLAPP motion was correct.

## 1.    Legal Principles and Standard of Review

Under the anti-SLAPP statute, a defendant may move to strike claims " 'arising from any act … in furtherance of the [defendant's] right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue.' " (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 884.) Section 425.16 does not completely insulate a defendant's protected speech but instead provides a mechanism "for weeding out, at an early stage, *meritless* claims arising from" protected activity. (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384 (*Baral*).)

Courts apply a two-prong test when evaluating an anti-SLAPP motion. (*Baral*, *supra*, 1 Cal.5th at p. 384.) "First, the defendant must establish that the challenged claim arises from activity protected by section 425.16." (*Ibid*.) To determine whether the plaintiff's causes of action arise from the defendant's protected activity, we look at the "pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2); see also *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.)

 If the defendant establishes the plaintiff's claims arise out of protected activity, the plaintiff must demonstrate a probability of prevailing on her claims. (*Baral*, *supra*, 1 Cal.5th at p. 384.) To do so, the plaintiff must make a prima showing of facts to sustain a favorable judgment. (*Wong v. Jing* (2010) 189 Cal.App.4th 1354, 1368 (*Wong*).) As part of her burden, the plaintiff must present evidence that would be admissible at trial and cannot

rely "on the allegations in the complaint or assertions in a declaration based on information and belief." (*Baral*, at p. 384.)

For the second prong, the court conducts an analysis akin to evaluating a summary judgment motion. (*Baral*, *supra*, 1 Cal.5th at p. 384.) "The court does not weigh evidence or resolve conflicting factual claims. Its inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment. [The court] accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law." (*Id.* at pp. 384–385.) If the plaintiff makes a prima facie showing of a likelihood of success, the court should deny the anti-SLAPP motion unless, as a matter of law, the defendant's evidence defeats the plaintiff's claim. (*Wong*, *supra*, 189 Cal.App.4th at p. 1368.)

We independently review an order granting a special motion to strike under section 425.16. (*Paulus v. Bob Lynch Ford, Inc.* (2006) 139 Cal.App.4th 659, 672 (*Paulus*).) " ' "[W]e engage in the same, two-step process as the trial court to determine if the parties have satisfied their respective burdens. [Citations.] If the defendant fails to show that the lawsuit arises from protected activity, we affirm the trial court's ruling and need not address the merits of the case under the second prong of the statute." ' [Citation.]" (*Abuemeira v. Stephens* (2016) 246 Cal.App.4th 1291, 1298 (*Abuemeira*).)[5]

---

[5] On September 2, 2022, after the parties filed their briefs, Koerber submitted a letter brief directing our attention to the California Supreme Court's recent decision in *Serova v. Sony Music Entertainment* (2022) 13 Cal.5th 859. On September 6, 2022, defendants submitted a letter brief directing our attention to the

## 2. The commercial speech exemption does not apply to Koerber's claims.

Koerber contends her claims against defendants are exempt from the anti-SLAPP statute under section 425.17, subdivision (c). According to Koerber, all her claims arise solely out of defendants' "commercial speech." We disagree.

Under section 425.17, subdivision (c), commercial speech is not protected by the anti-SLAPP statute. (*Simpson Strong-Tie Co., Inc. v. Gore* (2010) 49 Cal.4th 12, 22 (*Simpson*).) For a claim to fall under the commercial speech exemption, the following requirements must be met: (1) the moving party was primarily engaged in the business of selling goods or services; (2) the moving party's challenged conduct was a representation of fact about its operations or services, intended to obtain or promote sales of the moving party's goods or services; and (3) the moving party's intended audience was an actual or potential customer. (§ 425.17, subd. (c); *Simpson*, at p. 23.)

The party seeking to avoid application of the anti-SLAPP statute bears the burden of proving the commercial speech exemption applies. (*Simpson, supra*, 49 Cal.4th at pp. 22–25.) Courts narrowly construe this exemption. (*Id*. at p. 22.)

Koerber cites to no admissible evidence that would support a finding that defendants are "primarily engaged in the business of selling goods or services." (§ 425.17, subd. (c).) Rather, she relies primarily on allegations in her complaint and statements from her counsel's declaration that were excluded by the trial court to claim defendants consist of for-profit corporations who

Supreme Court's recent decision in *Geiser v. Kuhns* (2022) 13 Cal.5th 1238.

21

primarily engage in the sales of goods or services "by posting commercial online content advertising themselves and Defendant O'Keefe." But allegations in Koerber's complaint are not evidence. (See *Schoendorf v. U.D. Registry, Inc.* (2002) 97 Cal.App.4th 227, 236 [in opposing an anti-SLAPP motion, the plaintiff "cannot simply rely on the allegations in its own pleadings" to make the required evidentiary showing].) And, as we explained above, Koerber has failed to show the court erred in excluding any of the evidence she submitted in support of her opposition to defendants' anti-SLAPP motion. In any event, as the court found, defendants presented evidence that Project Veritas and Action Fund are "non-profit" media organizations that engage in "undercover investigative journalism."

Koerber also failed to show that O'Keefe's statements in the September 2017 Video constitute a representation of fact about defendants' operations or services, intended to obtain or promote sales of defendants' goods or services. (§ 425.16, subd. (c).) O'Keefe does not reference any goods that defendants were promoting for sale. And although O'Keefe told viewers to stay tuned for more videos because defendants intended to release additional material on their "American Pravda" series, O'Keefe never solicited the sale of any goods or services related to that series or any of the organization's other projects.

In short, nothing in the record suggests O'Keefe's statements in the September 2017 Video were made to induce the purchase of any goods or services. (*Jams, Inc. v. Superior Court* (2016) 1 Cal.App.5th 984, 997 ["The issue is whether or not the statement or conduct from which the causes of action arise is speech used to induce a commercial transaction."].) Thus, the

22

court properly found Koerber's claims against defendants are not exempt from the anti-SLAPP statute.

### 3. Koerber's claims arise out of Project Veritas's protected activity.

Next, Koerber argues none of her claims arise out of activity protected by the anti-SLAPP statute. According to Koerber, O'Keefe's statements about her in the September 2017 Video did not relate to any "public issues" and, as a result, are not entitled to anti-SLAPP protection. We reject this argument as well.

Among other types of conduct, section 425.16, subdivision (e) protects "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law." (§ 425.16, subd. (e)(2).) To qualify for protection under section 425.16, subdivision (e)(2), the moving party "need not separately demonstrate that the statement concerned an issue of public significance." (*Sipple v. Foundation For Nat. Progress* (1999) 71 Cal.App.4th 226, 236–237.) Rather, it is sufficient for the challenged statement to have been made as part of a report or article commenting on an official proceeding, such as a lawsuit. (*Id.* at pp. 237–238; see also *Bernstein v. LaBeouf* (2019) 43 Cal.App.5th 15, 25 ["[j]udicial proceedings, by definition, are matters of public interest under the anti-SLAPP statute"].) Thus, reports of judicial proceedings, including reports appearing on websites, "are an exercise of free speech within the meaning of section 425.16." (*Traditional Cat Assn., Inc. v. Gilbreath* (2004) 118 Cal.App.4th 392, 397–398 (*Gilbreath*); see e.g., *Sipple*, at pp. 236–238; *Lafayette Morehouse, Inc. v. Chronicle Publishing Co.* (1995) 37 Cal.App.4th 855, 863

["colorful" statements made in articles about ongoing lawsuits were protected as " 'writings made in connection with an issue under consideration or review by a legislative, executive, or judicial body' "].)

All of Koerber's claims in this lawsuit arise out of statements O'Keefe made in a video report about lawsuits filed against defendants, including Koerber's first lawsuit against them. After watching the video, it is clear that O'Keefe made the complained-of statements as part of his commentary on Koerber's first lawsuit, which at the time the video was released, was still pending against defendants. Since O'Keefe's statements in the September 2017 Video were made as part of a report about judicial proceedings that was published on various websites, they qualify as protected speech under section 425.16, subdivision (e)(2). (*Gilbreath*, *supra*, 118 Cal.App.4th at pp. 397–398.)

O'Keefe's statements in the September 2017 Video also qualify as protected speech under section 425.16, subdivision (e)(3), which protects "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest." (§ 425.16, subd. (e)(3).) Websites such as YouTube, Twitter, and Facebook, where the September 2017 Video was published, qualify as "public forums" under the anti-SLAPP statute. (*Jackson v. Mayweather* (2017) 10 Cal.App.5th 1240, 1252 [websites accessible to the public are "public forums" under the anti-SLAPP statute].) Additionally, by the time the video was published, Project Veritas's investigation into Common Core and the various lawsuits filed against the organization arising out of its conduct during that investigation had been covered by various news agencies in written and televised reports. Thus, O'Keefe's statements commenting on the

lawsuits arising out of Project Veritas's Common Core investigation, including Koerber's first lawsuit against the organization, addressed a matter of public interest. (See *Symmonds v. Mahoney* (2019) 31 Cal.App.5th 1096, 1109 [news coverage of an issue is a factor in determining whether the issue is in the public interest].)

Thus, Koerber's claims against defendants fall within the scope of the anti-SLAPP statute.

4. **Koerber hasn't demonstrated a probability of prevailing on the merits of her claims for IIED, negligence, and economic interference.**

Koerber contends the court erred when it dismissed her cause of action for IIED because that claim was superfluous to Koerber's cause of action for defamation. We disagree.

"When claims for invasion of privacy and emotional distress are based on the same factual allegations as those of a simultaneous libel claim, they are superfluous and must be dismissed." (*Couch v. San Juan Unified School Dist.* (1995) 33 Cal.App.4th 1491, 1504.)

Koerber's claims for IIED and defamation are based on identical factual allegations, and Koerber does not argue to the contrary. That is, Koerber points to no factual allegations supporting her IIED claim that do not also form the basis for her defamation claim. The court, therefore, properly dismissed Koerber's IIED claim as redundant of her defamation claim. (See *Couch v. San Juan Unified School Dist.*, *supra*, 33 Cal.App.4th at p. 1504.)[6]

---

[6] Some courts have held that a superfluous cause of action for IIED should be dismissed through a demurrer instead of through an anti-

25

In any event, Koerber hasn't shown she was likely to prevail on her claim for IIED. To prove IIED, a plaintiff must establish: (1) outrageous conduct by the defendant; (2) the defendant's intent to cause, or reckless disregard of the probability of causing, emotional distress; (3) the plaintiff's suffering of severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. (*Yau v. Allen* (2014) 229 Cal.App.4th 144, 160.) To be outrageous, conduct must be " 'so extreme as to exceed all bounds of that usually tolerated in a civilized society.' " (*Ibid.*)

Koerber offers no cognizable factual or legal argument explaining how she was likely to prevail on her claim for IIED. In her opening brief, Koerber argues only that her "[d]eclaration is sufficient to meet the minimal merit standard … , and the Trial Court's ruling must be reversed." In her reply brief, Koerber points to statements in her declaration where she asserts she

<hr>

SLAPP motion. (See *Dickinson v. Cosby* (2017) 17 Cal.App.5th 655, 692.) As we noted above, defendants filed a demurrer to Koerber's complaint when they filed their anti-SLAPP motion. Koerber, however, has not included a copy of that demurrer in the appellate record. We therefore must presume defendants also raised this argument in their demurrer and, had the court not first ruled on the anti-SLAPP motion, it would have sustained without leave to amend the challenge to Koerber's IIED claim when it ruled on the demurrer. (*Fernandes v. Singh* (2017) 16 Cal.App.5th 932, 935, fn. 3 [" 'To the extent the record is incomplete, we construe it against [the appellant]' "].) In any event, Koerber hasn't shown, let alone argued, she was prejudiced by the court dismissing her IIED claim through the anti-SLAPP motion as opposed to through the demurrer. (Cal. Const., art. VI, § 13; see also § 475 [no decision shall be set side unless the appellant establishes the alleged error was prejudicial].)

suffered various physical and psychological injuries because of the September 2017 Video, while asserting in conclusory fashion that "[t]here can be no dispute that Defendants' defamatory statements constitute extreme and outrageous conduct." Because Koerber offers no meaningful legal or factual analysis explaining how she could prove the first and second elements of her IIED claim—i.e., outrageous conduct and intent—she hasn't shown she was likely to prevail on that cause of action. (See *Paulus*, *supra*, 139 Cal.App.4th at p. 685 [appellant forfeited argument challenging court's second-prong finding where he offered only a conclusory argument that he had "met his burden to show a prima [facie] case"].)

As to her causes of action for negligence and economic interference, Koerber also hasn't shown she was likely to prevail on the merits of those claims.

To prevail on a claim for negligence, a plaintiff must prove that (1) the defendant owed her a duty of care, (2) the breach of which (3) proximately caused (4) her injury. (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 57.) Koerber claims she satisfied her burden to show a likelihood of prevailing on her negligence claim because her "evidence establishes Defendants' defamatory statements breached their duty of due care, which breach caused Koerber significant damages. … This is more than sufficient to establish a prima facie case of negligence, and a probability of prevailing on this claim." (Italics omitted.)

Koerber fails to identify what "evidence" establishes the elements of breach, proximate cause, and injury, nor does she develop any meaningful factual or legal analysis explaining how she was likely to satisfy those elements. Consequently, Koerber

27

has forfeited her challenge to the court's finding that she wasn't likely to prevail on her claim for negligence. (*Paulus*, *supra*, 139 Cal.App.4th at p. 685.)

Koerber's argument addressing her economic interference cause of action doesn't fare any better. To prevail on a claim for economic interference, a plaintiff must prove: (1) an economic relationship between the plaintiff and a third party that offers a probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant intended to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the defendant's acts. (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1153.)

Koerber doesn't offer any legal argument or factual analysis explaining how she was likely to satisfy the second and third elements of her cause of action for economic interference. That is, Koerber doesn't explain how she could prove that defendants knew about Koerber's relationship with any prospective employers or that the publication of the September 2017 Video, including any of the challenged statements from that video, were intended to disrupt Koerber's relationship with a prospective employer. Koerber, therefore, hasn't shown the court erred when it found she wasn't likely to prevail on her claim for economic interference. (*Paulus*, *supra*, 139 Cal.App.4th at p. 685.)

**5. Koerber demonstrated a probability of prevailing on the merits of her causes of action for defamation and unfair business practices (Defendants' Cross-Appeal).**

In their cross-appeal, defendants contend the court erred in finding Koerber met her second-prong burden with respect to her claims for defamation and unfair business practices. We disagree.

### 5.1. Defamation

Defamation involves (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or cause special damage. (*Wong, supra*, 189 Cal.App.4th at p. 1369.) A statement is libelous if it is a false and unprivileged publication that exposes the plaintiff "to hatred, contempt, ridicule, or obloquy," or causes her "to be shunned or avoided," or jeopardizes her employment. (Civ. Code, § 45; *McGarry v. University of San Diego* (2007) 154 Cal.App.4th 97, 112 (*McGarry*).)

The primary question for a defamation claim is whether the published statement declares or implies a provably false assertion of fact. (*Wong, supra*, 189 Cal.App.4th at p. 1370.) Because the actionable statement in a defamation claim must include a falsehood, courts distinguish between statements of fact and statements of opinion. (*Ibid*.) Statements of fact may be actionable, while statements of opinion generally are not. (*Ibid*.) But statements of opinion aren't always immune from liability. If an opinion implies a false assertion of fact, the opinion may be actionable defamation. (*Ibid*.) Thus, courts look to whether a reasonable fact finder could conclude the challenged statement declares or implies a provably false assertion of fact. (*Ibid*.)

Courts look to the totality of the circumstances to determine whether a statement communicates or implies a

29

provably false statement of fact. (*McGarry*, *supra*, 154 Cal.App.4th at p. 113.) Courts must examine the language used in the statement and the context in which the statement was made. (*Ibid.*) When the complained-of speech concerns a matter of public interest, "a private-figure plaintiff must prove the falsity of the offensive speech." (*ZL Technologies, Inc. v. Does 1–7* (2017) 13 Cal.App.5th 603, 631 (*ZL Technologies*).)

Koerber's defamation cause of action arises out of O'Keefe's statements in the September 2017 Video implying that Koerber was an "official" in the book publishing industry who said she does not "care about kids[;] it's all about money" during an investigation into the Common Core curriculum. As we explain, Koerber has shown a probability of success on her defamation cause of action.

As a preliminary matter, defendants contend that O'Keefe's statement that Koerber was an "official" cannot support a defamation claim because, even assuming the statement was false, it is not defamatory in nature. Thus, accordingly to defendants, allegations referring to that statement should be stricken from Koerber's pleading. To be sure, we agree there is generally nothing defamatory about falsely referring to a person as an "official." Nevertheless, the court wasn't required to strike Koerber's allegations that O'Keefe falsely referred to her as an "official" because those allegations provide context for her allegations that she was also falsely accused by O'Keefe of saying that she does not "care about kids[;] it's all about money." (See *Baral*, *supra*, 1 Cal.5th at p. 394 ["[a]llegations of protected activity that merely provide context, without supporting a claim for recovery, cannot be stricken under the anti-SLAPP statute"]; see also *Wong*, *supra*, 189 Cal.App.4th at p. 1370 [context is

30

relevant to determining whether a challenged statement supports a claim for defamation].)

As for O'Keefe's statement implying Koerber was the person who said, "we don't care about kids[;] it's all about money," it supports Koerber's defamation claim. O'Keefe's statement was factual in nature—i.e., it attributed a quote to Koerber—and it was used to describe to viewers one of the topics of the September 2017 Video—i.e., Koerber's first lawsuit against defendants. Nothing about the context surrounding the statement suggests it was offered as O'Keefe's subjective opinion about Koerber or her prior lawsuit.

The surrounding context also supports an inference that O'Keefe intended viewers to believe Koerber was the person who said, "we don't care about kids[;] it's all about money." As O'Keefe makes that statement, a photograph of the cover page of a motion filed in Koerber's first lawsuit against defendants appears on the right side of the screen while O'Keefe holds a copy of Koerber's complaint from that lawsuit. Immediately thereafter, while a zoomed-in photograph of Koerber's complaint with a sticky note containing her name is the only thing visible on screen, O'Keefe says, "one of the people in the book publishing industry has sued us. I don't know why she's suing us. She should sue herself; she's the one who said what she said, and she didn't deny it." Notably, O'Keefe never attributes the statement "we don't care about kids[;] it's all about money" to someone other than Koerber, nor does he tell the viewers that Koerber did not make that statement. The circumstances of the video, therefore, support an inference that O'Keefe intended his viewers to believe that Koerber was the person who said, "we don't care about kids[;] its all about money." (*Wong, supra,* 189 Cal.App.4th at p. 1372 [a

defendant is " 'liable for what is insinuated, as well as for what is stated explicitly' "]; see also *Kapellas v. Kofman* (1969) 1 Cal.3d 20, 33 ["false inferences or implications raised by the arrangement and phrasing of apparently non-libelous statements can be as injurious as explicit epithets"].)

Koerber also met her burden to show the statement was false. Koerber testified that she never said, "we don't care about kids[;] it's all about money." And, in support of their anti-SLAPP motion, defendants submitted a copy of the January 2016 Video, in which two people—neither of whom is Koerber—make similar statements. One interviewee states: "I hate kids. I'm in it to sell books, don't even kid yourself for a heartbeat." The other interviewee states: "There's always money in it. It's never about the kids." Like the September 2017 Video, O'Keefe appears in and narrates the January 2016 Video. The evidence, therefore, supports a finding that O'Keefe knew Koerber didn't say "we don't care about kids[;] it's all about money" (or a statement to the same effect) or that he, at the very least, acted with reckless disregard for the truth when he attributed that statement to Koerber. (See *ZL Technologies, supra*, 13 Cal.App.5th at p. 631 [actual malice exists where defendant knew the complained-of speech was false or acted with reckless disregard of whether it was false].)

Moreover, implying Koerber stated that she cares only about money, and not kids, is defamatory. That is, implying that someone who worked in the education industry doesn't care about kids and cares only about money is likely to, at the very least, harm that person's professional reputation. (*Balla v. Hall* (2021) 59 Cal.App.5th 652, 678 [a statement is defamatory if it tends to

32

injure the plaintiff's reputation]; see also Civ. Code, § 46, subd. (3).)

Koerber also presented evidence that she was injured by O'Keefe's statements in the September 2017 Video. In her declaration, Koerber testified that because of that video, she "lost contracts, income, benefits, 401k contributions, health insurance, car, phone, email, vacation and bonuses, and [has] become extremely emotionally distressed and physically ill."

Finally, we reject defendants' contention that O'Keefe's statements in the September 2017 Video are immune from liability under the litigation privilege. Under Civil Code section 47, subdivision (b), a privileged statement is one that is (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action. (See *Abuemeira*, *supra*, 246 Cal.App.4th at p. 1299.) The litigation privilege is designed to give litigants and witnesses the "utmost freedom of access to the courts without fear of litigation reprisal." (*Ibid.*)

The litigation privilege does not, however, protect statements made to persons who are not participants in the underlying litigation, such as "publications to the general public through the press." (*Abuemeira*, *supra*, 246 Cal.App.4th at p. 1299.) As other courts have recognized, litigating through the press does not fall within the spirit of the litigation privilege but instead "serves no purpose other than to provide immunity to those who would inflict damage upon the judiciary." (*Ibid.*; see also *GetFugu, Inc. v. Patton Boggs LLP* (2013) 220 Cal.App.4th 141, 153.)

33

The September 2017 Video was not produced for any judicial or quasi-judicial proceeding. (See Civ. Code, § 47, subd. (b).) Instead, the video was published on Action Fund's website and other websites and social media platforms where it could be viewed by the general public. (*Abuemeira*, *supra*, 246 Cal.App.4th at p. 1299 [defendant's "communications to the general public through the Internet and the media are not protected by the litigation privilege"].) Defendants present no evidence that the video's intended audience was in any way connected with Koerber's first lawsuit or that the video was otherwise intended to achieve any legitimate objective in that litigation. (*Id*. at pp. 1299–1300 [anti-SLAPP defendants carried burden to show litigation privilege barred plaintiff's lawsuit because the challenged statements were directed at interested persons or designed to achieve objectives of litigation].)[7]

For these reasons, Koerber met her burden to demonstrate a probability of prevailing on her defamation cause of action.

### 5.2. Unfair Business Practices

Business and Professions Code section 17200 (Section 17200) prohibits "any unlawful, unfair or fraudulent business act or practice." A prevailing plaintiff under Section 17200 is

---

[7] Defendants also claim O'Keefe's statements in the September 2017 Video are protected by the "fair and true" reporting privilege. (See Civ. Code, § 47, subd. (d).) Defendants have forfeited this contention because they didn't assert the fair and true reporting privilege in their anti-SLAPP motion or reply papers. (*Kern County Dept. of Child Support Services v. Camacho* (2012) 209 Cal.App.4th 1028, 1038 ["It is axiomatic that arguments not raised in the trial court are forfeited on appeal."].)

generally limited to injunctive relief and restitution. (*Gray v. Dignity Health* (2021) 70 Cal.App.5th 225, 236.)

A business act is unlawful under Section 17200 if it violates any other law. (*Lazar v. Hertz Corp.* (1999) 69 Cal.App.4th 1494, 1505.) Thus, "[b]y defining unfair competition to include any '*unlawful* … business act or practice' [citation], [Section 17200] permits violations of other laws to be treated as unfair competition that is independently actionable." (*Kasky v. Nike, Inc.* (2002) 27 Cal.4th 939, 949 (*Kasky*).) In other words, virtually any state or federal law can serve as a predicate for an action under Section 17200. (*Hale v. Sharp Healthcare* (2010) 183 Cal.App.4th 1373, 1383; see also *Klein v. Chevron U.S.A., Inc.* (2012) 202 Cal.App.4th 1342,1380 [a business practice is "fraudulent" within the meaning of Section 17200 if it is likely to deceive the public or is based on representations to the public which are untrue].)

A private plaintiff can bring a claim for unfair business practices under Section 17200. (*Kasky*, *supra*, 27 Cal.4th at p. 949.) To have standing, a private plaintiff must show she suffered "injury in fact and has lost money or property as a result of the unfair" business practice. (*Ibid*.)

As we just explained, Koerber demonstrated a likelihood of success on her defamation claim against defendants, including showing that the September 2017 Video caused her to suffer economic loss. Additionally, Verney, Project Veritas's and Action Fund's executive director, testified that Action Fund released the September 2017 Video through its president, O'Keefe. Nothing in the record suggests that the publication and release of the September 2017 Video was not a business act or practice of Project Veritas, Action Fund, or O'Keefe. And although

35

defendants contend on appeal that the court "failed to consider in the first instance whether the allegedly-defamatory statement made by O'Keefe constituted an actual *business practice* of each" defendant, that contention is conclusory and not developed in their briefing. Koerber, therefore, has shown a likelihood of prevailing on her claim for unfair business practices under Section 17200. (See *Becerra v. McClatchy Co.* (2021) 69 Cal.App.5th 913, 951 [where an unfair business practices claim "is derivative of an underlying violation of law, it must stand or fall with the underlying claim"].)[8]

## Attorney Fees and Costs

Finally, Koerber challenges the court's order awarding defendants attorney fees and costs. As we explain, Koerber's arguments challenging the fees and costs award lack merit.

### 1.   Relevant Background

In July 2019, defendants filed a motion for $44,422 in attorney fees and costs (fees motion), arguing they were prevailing parties under the anti-SLAPP statute. Defendants claimed they incurred $34,827 in attorney fees for work

---

[8] We decline to address defendants' contention that the court failed to strike allegations of protected activity for which Koerber did not demonstrate a probability of success. Defendants do not identify any individual allegation they claim the court should have stricken, nor do they offer meaningful factual or legal analysis explaining why the court should have stricken any individual allegation. (See *Baral*, *supra*, 1 Cal.5th at p. 396 [the defendant bears the burden "of identifying all allegations of protected activity, and the claims for relief supported by them"]; see also *Keyes*, *supra*, 189 Cal.App.4th at pp. 655–656 [party claiming error on appeal forfeits any points not supported by cognizable legal argument or factual analysis].)

36

associated with the anti-SLAPP motion, and they incurred, or anticipated to incur, $8,980 in attorney fees for work associated with the fees motion. Defendants also sought $615 in incurred and anticipated costs.

In support of their fees motion, defendants submitted billing invoices and declarations executed by their counsel, Rubin and Sanguinetti, detailing the time the attorneys and one paralegal spent working on defendants' anti-SLAPP and fees motions. The $34,827 in attorney fees related to litigating the anti-SLAPP motion was based on the following calculations: (1) Rubin billed 36.7 hours at a rate of $250 per hour, for a total of $9,175; (2) Sanguinetti billed 127.3 hours at a rate of $200 per hour, for a total of $25,460; and (3) the paralegal billed 2.4 hours at a rate of $80 per hour, for a total of $192. The $8,980 in attorney fees related to litigating the fees motion was calculated as follows: (1) Rubin billed 3 hours, and expected to bill an additional 7 hours, all at a rate of $250 per hour, for a total of $2,500; (2) Sanguinetti billed 22.4 hours, and expected to bill an additional 10 hours, all at a rate of $200 per hour, for a total of $6,480. According to Rubin, defendants spent $555 in filing fees and other costs necessary to litigate their anti-SLAPP motion and expected to incur an additional $60 in filing fees for their fees motion.

Koerber opposed the fees motion. Among other things, she argued Hartsock wasn't entitled to recover attorney fees or costs because defendants presented no evidence that Hartsock was personally billed for any services proffered by defense counsel. Koerber also claimed that Project Veritas, Action Fund, and O'Keefe weren't prevailing parties under section 425.16, subdivision (c) or, at the very least, didn't obtain any practical

benefit from the court's ruling on their anti-SLAPP motion because the court denied their motion as to her causes of action for defamation and unfair business practices. Finally, Koerber argued the court should deny defendants' fees motion in its entirety because the amount of fees and costs requested by defendants was excessive and unreasonably inflated.

The court granted defendants' motion, awarding them $40,942 in attorney fees and costs. The court found Hartsock was entitled to recover fees and costs even if those expenses were paid by a third party. The court also found Project Veritas, Action Fund, and O'Keefe were prevailing parties under section 425.16, subdivision (c) because the court's ruling on defendants' anti-SLAPP motion narrowed the scope of Koerber's lawsuit and her potential entitlement to damages.

As to the amount of defendants' fees request, the court found it was reasonable with respect to counsel's work litigating the anti-SLAPP motion. But the court reduced the amount of attorney fees that defendants requested with respect to the fees motion, finding the amount of hours counsel billed, and expected to bill, for that motion was excessive. Specifically, the court awarded defendants fees for only 10 of the 22.4 hours counsel actually billed, and 5 of the 10 hours counsel expected to bill, for work related to litigating the fees motion.

## 2. Applicable Law and Standard of Review

A defendant who prevails on an anti-SLAPP motion is entitled to an award of attorney fees and costs "incurred in connection with" the anti-SLAPP motion. (*569 E. County Boulevard LLC v. Backcountry Against the Dump, Inc.* (2016) 6 Cal.App.5th 426, 432 (*Backcountry*); see also § 425.16, subd. (c)(1).) Thus, a prevailing defendant may recover all fees incurred

38

in litigating the anti-SLAPP motion, plus fees incurred in responding to an appeal from an order granting an anti-SLAPP motion or in litigating the fee award itself. (*Wanland v. Law Offices of Mastagni, Holstedt & Chiurazzi* (2006) 141 Cal.App.4th 15, 21.)

The fee award should not, however, compensate the defendant for fees unrelated to the anti-SLAPP motion, such as " 'attacking service of process, preparing and revising an answer to the complaint, [or] summary judgment research.' [Citation.]" (*Backcountry*, *supra*, 6 Cal.App.5th at p. 433.) "In short, the award of fees is designed to ' "reimburs[e] the prevailing defendant for expenses incurred *in extracting* herself from a baseless lawsuit" ' [citation] rather than to reimburse the defendant for all expenses incurred *in* the baseless lawsuit." (*Ibid.*)

In determining the amount of the fees to award, the court should utilize the "lodestar adjustment method." (*Nichols v. City of Taft* (2007) 155 Cal.App.4th 1233, 1239–1240 (*Nichols*).) To calculate the "lodestar" figure, the court must determine the number of hours reasonably spent on matters related to the anti-SLAPP motion and multiply that number by the prevailing hourly rate for other private attorneys in the same community performing similar, noncontingent litigation. (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1133.)

Because the trial court is most familiar with the litigation and in the best position to determine the value of the legal services rendered in the case, we will not disturb the court's decision to award attorney fees unless we are convinced that decision is clearly wrong—i.e., an abuse of discretion. (*Nichols*, *supra*, 155 Cal.App.4th at p. 1239.) "The appellant challenging

39

the award 'bear[s] the burden of affirmatively establishing that the trial court abused its discretion.' [Citation.] As with most trial court orders, we ' "presume the trial court's attorney fees award is correct." ' [Citation.]" (*In re Marriage of Minkin* (2017) 11 Cal.App.5th 939, 954 (*Minkin*).)

### 3. Hartsock is entitled to recover attorney fees and costs as a prevailing party.

As a preliminary matter, Koerber argues the court erred when it awarded Hartsock attorney fees and costs. Although Koerber doesn't dispute Hartsock was a prevailing party under section 425.16, subdivision (c), she claims he can't recover any attorney fees or costs because Project Veritas was the only entity billed for defense counsel's services in litigating the anti-SLAPP and fees motions. This argument is meritless.

Under section 425.16, subdivision (c), a prevailing defendant is entitled to recover attorney fees and costs even if those expenses are paid by a third party. (*Macias v. Hartwell* (1997) 55 Cal.App.4th 669, 675–676.) As one court has explained, "[w]e do not presume the Legislature intended to create a disparity between defendants who advance their own attorney fees and those whose counsel look to an outside source for payment. In each case, the fees have accrued and can be recovered." (*Rosenaur v. Scherer* (2001) 88 Cal.App.4th 260, 285 (*Rosenaur*).) Koerber cites no authority to the contrary.

Because Hartsock was a prevailing party under section 425.16, subdivision (c), the court properly awarded him attorney fees and costs. (*Rosenaur*, *supra*, 88 Cal.App.4th at p. 287.)

**4. Project Veritas, Action Fund, and O'Keefe are entitled to recover attorney fees and costs as prevailing parties.**

Koerber next contends Project Veritas, Action Fund, and O'Keefe are not entitled to an award of attorney fees and costs because they obtained no practical benefit from the court's order granting in part and denying in part their anti-SLAPP motion. We disagree.

Under section 425.16, subdivision (c), a defendant who partially prevails on an anti-SLAPP motion is entitled to recover attorney fees and costs "unless the results of the motion were so insignificant that the party did not achieve any practical benefit from bringing the motion." (*Mann v. Quality Old Time Service, Inc.* (2006) 139 Cal.App.4th 328, 338 (*Mann*).) The trial court has broad discretion to determine whether a defendant is a "prevailing party" under section 425.16. (*Ibid*.)

In deciding how much to award a partially prevailing defendant, the court should consider various factors, including "the extent to which the defendant's litigation posture was advanced by the motion, whether the same factual allegations remain to be litigated, whether discovery and motion practice have been narrowed, and the extent to which future litigation expenses and strategy were impacted by the motion. The fees awarded to a defendant who was only partially successful on an anti-SLAPP motion should be commensurate with the extent to which the motion changed the nature and character of the lawsuit in a practical way." (*Mann, supra*, 139 Cal.App.4th at p. 345.)

The court did not abuse its discretion in finding Project Veritas, Action Fund, and O'Keefe were entitled to recover attorney fees and costs as partially prevailing defendants. While

some factual issues that were relevant to the causes of action that the court dismissed remain the same after the court ruled on defendants' anti-SLAPP motion, such as whether O'Keefe's allegedly defamatory statements in the September 2017 Video injured Koerber, some factual issues have been eliminated. Consequently, the scope of the parties' future discovery is narrower than it would have been had the court not dismissed Koerber's economic interference claim.

To summarize, Project Veritas, Action Fund, and O'Keefe obtained a practical benefit by bringing their anti-SLAPP motion and, as a result, are entitled to recover attorney fees and costs under section 425.16, subdivision (c).[9] (*Mann, supra*, 139 Cal.App.4th at p. 345.)

### 5. The fees and costs award was reasonable.

Koerber claims the court erred when it allowed defendants to recover attorney fees for work defense counsel performed litigating the anti-SLAPP and fees motions that Project Veritas filed in Koerber's first lawsuit. According to Koerber, defense counsel "simply cut and pasted from [Project Veritas's] prior fee[s] motion" and spent too much time preparing defendants' anti-SLAPP motion when counsel prepared a similar motion in Koerber's first lawsuit. This argument lacks merit.

---

[9] Koerber doesn't contend that even if Project Veritas, Action Fund, and O'Keefe were entitled to an award of attorney fees and costs, the court should have reduced the amount of their award using the factors discussed above to reflect they were unsuccessful on two of the challenged causes of action asserted in Koerber's complaint. (See *Mann, supra*, 139 Cal.App.4th at p. 345.)

As the court observed, Koerber never produced copies of Project Veritas's anti-SLAPP and fees motions from her first lawsuit that she claims were substantially similar to the motions that defendants filed in this lawsuit. Instead, Koerber provided only her counsel's testimony claiming that defense counsel's invoices in this case billed defendants for work that was performed as part of Koerber's first lawsuit. The court was free, however, to reject Koerber's counsel's testimony, especially when that testimony wasn't corroborated by any other evidence. We will not disturb the court's credibility determinations on appeal. (*Estate of Young* (2008) 160 Cal.App.4th 62, 76 ["We may not reweigh the evidence and are bound by the trial court's credibility determinations"].)

Koerber also argues defendants improperly requested attorney fees for time defense counsel spent analyzing and reviewing Koerber's complaint because counsel would have needed to review that document regardless of whether defendants filed their anti-SLAPP motion. Defendants' billing invoices show, however, that defense counsel reviewed Koerber's complaint for the specific purpose of preparing defendants' anti-SLAPP motion. Additionally, Rubin testified that he reviewed all the invoice entries and confirmed that defendants were only seeking to recover fees for work associated with the anti-SLAPP and fees motions. Koerber, on the other hand, points to no evidence showing counsel's review of the complaint was unrelated to either motion, nor does she cite any authority prohibiting the recovery of fees for time spent reviewing a document that is relevant to matters both related and unrelated to an anti-SLAPP motion. Consequently, Koerber hasn't shown the court abused its discretion in awarding defendants attorney fees for time defense

43

counsel spent reviewing Koerber's complaint. (*Minkin, supra,* 11 Cal.App.5th at p. 954 [an appellant challenging a fees award must affirmatively show the court abused its discretion in calculating the award].)

Likewise, Koerber hasn't shown the court erred in awarding defendants attorney fees for 2.8 hours that defense counsel spent communicating with various individuals. According to Koerber, defense counsel improperly redacted information that describes the nature of the work counsel discussed during those communications. Koerber, however, hasn't identified any specific billing entry from which defense counsel improperly redacted information. As we explained above, it is not our job to comb through the record to find evidence that substantiates Koerber's claims of error. Koerber, therefore, hasn't met her burden to show the court erred in awarding defendants attorney fees for time defense counsel spent communicating with other people. (*Minkin, supra,* 11 Cal.App.5th at p. 954.)

## DISPOSITION

The orders granting in part and denying in part defendants' anti-SLAPP motion and awarding defendants attorney fees and costs are affirmed. The parties shall bear their own costs on appeal.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


LAVIN, Acting P. J.

WE CONCUR:


EGERTON, J.


RICHARDSON (ANNE K.), J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.